EDGAR H. KING, PLAINTIFF IN ERROR VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Criminal law—Forgery—Indictment—Acting state attorney— Privately retained prosecutor may act—Capacity for harm of paper forged—Appellate practice—Excepting en masse to several charges.

1.   An allegation in an indictment for forgery to the effect that the defendant: "did falsely make. forge and counterfeit a certain false, forged and counterfeit writing," etc., should not, on a motion to quash, be construed to mean that the defendant falsely made and forged an already existent document

that was itself a false and forged instrument, but it should receive the more liberal construction as meaning that the defendant did falsely make and forge the instrument as his own original creation, and that when so made by him it was a false, forged and counterfeit writing. The form of the allegation quoted is open to the criticism of being tautologus but does not for that reason vitiate the indictment.

2.  A mere brutum fulmen, on its face utterly valueless and of no binding force or efficacy for any purpose of harm, liability or injury to anyone, cannot be the subject of forgery. In order to be the subject of forgery the instrument forged must be upon its face, were it genuine, of some apparent legal efficacy for injury to another, or, as Mr. Wharton expresses it: "Should be one which would expose another to legal process."

3.  Though the instrument forged purports upon its face to grant an estate in land for a term of more than two years, but is invalid and ineffectual as a lease for such term because it is witnessed by only one witness when the statute requires two to give it effectiveness as such, yet if the instrument, were it genuine, could be specifically enforced in equity as a contract for a lease, or if it was effective as a license to make entry upon the land described therein, so as to shield parties entering under it from the charge of trespass, it is not an absolute nullity, but is effective for injury to another, and is, therefore, the subject of forgery.

4.  Section 1354 Revised Statutes, authorizing circuit judges to appoint a prosecuting attorney from among the members of the bar, whenever the official state attorney is absent from any regular or special term of court, etc., and requiring such appointee to be sworn faithfully to discharge the duties of state attorney, does not conflict with section 27 of article 3 of the constitution of 1885, which requires that the legislature shall provide for the election by the people or appointment by the governor of all state and county offices not otherwise provided for by the constitution. Such statute does not contemplate the filing of a *vacancy in the office*, but the exigency intended to be met by it presupposes that the *office is already filled* by an *incumbent officer*, or will be filled in the constitutional way· and it undertakes simply to supply a competent person *temporarily* to perform the official duties of that office. Even in the absence of such a statute, trial courts with criminal jurisdiction have an inherent power, in the exercise of such jurisdiction, to appoint some suitable person to represent the interests of the state temporarily during the absence or inability to act of the

officer whose official duty it is to so represent the state's interests.

5. At the common law to be the privately retained counsel for the prosecuting private individual was not recognized as a disqualification of such attorney for conducting the prosecution on behalf of the crown. Section 1354 Revised Statutes, providing for the appointment by circuit judges temporary acting state attorneys does not prescribe any other qualification or disqualification for such temporary prosecutor than that he shall be a member of the bar; and if he has been duly sworn as such acting state attorney, as provided by the statute, the fact that he may have been privately retained by the prosecuting witnesses to prosecute the case does not render him ineligible to represent the interests of the state in such prosecution in the capacity of acting state attorney, nor will it vitiate an indictment signed by him as such state attorney.

6. Under an indictment charging simply *forgery,* no conviction for *utterance* of the forged document can be had.

7. Where refusals to give two or more separate instructions containing distinct propositions of law are embraced in one general exception, the exception thus taken is not available before the appellate court if any one of such charges was properly refused.

Writ of Error to the Circuit Court for Gadsden County.

The facts of the case are stated in the opinion of the court.

*M. D. Price,* for Plaintiff in Error

*William B. Lamar,* Attorney-General, for Defendant in Error.

TAYLOR, C. J.

Edgar H. King, the plaintiff in error, on the 10th day of April, 1900, in the Circuit Court for Gadsden

county, was indicted for forgery as follows: "In the name and by the authority of the State of Florida: In the Circuit Court of the Second Judicial Circuit of the State of Florida, for Gadsden county, at the Spring term thereof in the year of our Lord one thousand nine hundred, Gadsden county, to-wit: The grand jurors of the State of Florida, inquiring in and for the body of the county of Gadsden, upon their oaths do present that Edgar H. King and W. B. McMillan, late of the county of Gadsden aforesaid, in the Circuit and State aforesaid, laborers, on the tenth day of October in the year of our Lord one thousand eight hundred and ninety-nine, with force and arms at and in the county of Gadsden aforesaid, feloniously did falsely make, forge and counterfeit a certain false, forged and counterfeit writing obligatory, to-wit: A lease of lands in said county of Gadsden, and State of Florida, and which said false, forged and counterfeit writing obligatory is of the following tenor, that is to say: State of Florida, Gadsden County. This agreement made this 10th day of October, 1899, between Judge Trogden parties of the first part, and W. B. McMillan parties of the second part, witnesseth: That for and in consideration of certain agreements herein contained to be performed by the said party of the second part, the said party of the first part grant unto the said party of the second part, his heirs and assigns, the right to enter upon certain lands hereinafter described, to use said lands together with pine trees growing thereon for turpentine purposes, the right to cut, chip and box all of the trees on said lands available for turpentine purposes. It is further agreed and covenanted that the said party of the second part, his heirs and assigns shall have and exercise all the

rights of ownership as to said lands for the management of his business, the right to cut, make and use roads through said lands whenever needed; to dig wells wherever necessary; to erect such buildings as still houses, or other houses as may be needed; to use such timber as may be required for boards or staves; to have all right to do such acts as may be necessary for the convenient management of said business, as such business is usually conducted; said parties of the first part hereby declare that they, the lawful owners of said lands and trees, and that there is no lien nor encumbrance on same; that they are located in the county of Gadsden, State of Fla., and described as follows: S. E. 1-4 of N. E. 1-4 Sec. 15, W 1-2 S. W. 1-4 Sec. 17, N. E. 1-4 of N. E. 1-4 Sec. 23, E. 1-2 of N. E. 1-4 Sec. 28; S. 1-2 of S. E. 1-4 Sec. 31; N. W. 1-4 of S. E. 1-4 and N. E. 1-4 of N. E. 1-4 of Sec. 31; W. 1-2 of S. W. 1-4 Sec. 31; N. E. 1-4 of N. E. 1-4, all in T. 3, R. 6, N. & W. This lease is to continue for a term of three years, beginning from the date of boxing the trees, and it is hereby agreed and understood that the date of entering upon said lands and boxing said trees is to be determined by said party of the second part, his heirs and assigns. The said party of the second part agrees to pay for said lease as follows: $10.00 cash and the balance when boxes are cut at the rate of $12.50 per thousand boxes.

In witness whereof said parties have hereunto set their hands and seals this the day and year first above written as the date hereof.

| Witness: | | |
|---|---|---|
| E. H. King, | Judge Trogden. | Seal. |
| | Internal | Seal. |
| | Revenue Stamp. | Seal |
| | 50c. | Seal. |

State of Florida,        )
County of Gadsden.    )
    .............. For value received I hereby assign,
transfer, set over and convey unto Gulf Naval Store
Company, its successors and assigns all my right, title, in-
terest and estate in and to the within lease and all bene-
fit to be derived therefrom.  This Oct. day of 21., A. D.
9,—.                        W. B. McMillan.   Seal.
Signed, sealed and delivered
in the presence of
        J. D. McDougald.

with intent then and there thereby to injure and defraud
the Gulf Naval Stores Company, a Florida corporation,
and the Aspalaga Naval Stores Company, a company
composed of W. B. Roddenberry, W. J. Singletary and
J. D. Russ.  Against the form of the statute in such case
made and provided to the evil example of all others in
the like case offending, and against the peace and dignity
of the State of Florida.                 W. H. Ellis,
Acting State's Attorney for the Second Judicial Circuit
    of the State of Florida, Prosecuting for said State."

    Upon this indictment the plaintiff in error was
alone tried and convicted in April, 1900, and sentenced to
two years' confinement in the penitentiary, and from such
sentence takes writ of error.

    The first assignment of error is that the court erred
in denying the defendant's motion to quash the indict-
ment.  This motion was upon the following grounds:
1st. Because said indictment is vague, indefinite and un-
certain, and charges no offence against the laws of the
State of Florida.

    2.   Because said indictment merely alleges a con-

clusion of law, and does not set forth sufficient facts to inform this defendant of what he is charged.

3.    Because said indictment fails to allege that if said instrument had been true and genuine, that the same would be of any binding force or effect upon any person whomsoever.

4.    Because said indictment alleges that the instrument alleged to be forged was of no legal validity whatever.

5.    Because said indictment does not allege that the lands described in said instrument alleged to be forged are situated in Gadsden county, Florida, or that the same are situated in the State of Florida.

6. Because said indictment does not allege that the property mentioned and described in said instrument alleged to be forged was at the time of such alleged forgery, or at any time prior or subsequent thereto, then and there the property of Judge Trogden, the person whose name is purported to be signed to such instrument.

7.    Because such indictment does not allege that the instrument alleged to have been forged by this defendant or his co-defendant, was so executed without authority of law, or without the knowledge and consent or direction of the said Judge Trogden whose name appears thereto as his act and deed.

8.    Because said indictment shows upon the face thereof that the instrument alleged to have been forged is an illegal instrument and of no legal validity. That said indictment further shows that said instrument alleged to be forged is not in compliance with the statutes in such cases made and provided as to leases of lands for a term of years of more than two years, and that such instrument

has no legal validity. There was no error in this ruling. It is contended here that the indictment shows upon its face that the instrument alleged to have been forged is utterly void, and, therefore, not the subject of forgery. This contention is based upon two grounds, *viz*: 1st, Because the indictment charges that the defendant "did falsely make, forge and counterfeit a certain *false, forged and counterfeit writing,*" &c., and, 2nd, because the alleged forged instrument purports on its face to be a conveyance of an interest or estate in lands for a longer term than two years, and, even if it were genuine, is void on its face for such purpose, because witnessed by only one witness, when our statute requires two witnesses to make it effectual.

The first of these contentions is untenable. The quoted language from the indictment does not mean to convey the idea that the defendants falsely made and forged a paper that was already in existence and that was itself a false and forged document, but its meaning is that they did falsely make and forge the instrument as their own original creation and that when so made by them it was a false, forged and counterfeit writing.. The form of the allegation used is open to the criticism of being tautologous, but does not for that reason vitiate the indictment. Duffin v. People, 107 Ill. 113, S. C. 47 Am. Rep. 431; People v. Kingsley, 2 Cowen 522, S. C. 14 Am. Dec. 520; Rex. v. Goate, 1 Ld. Raymond, 737.

As to the second ground of the contention, it is undoubtedly true that in order to be the subject of forgery the instrument forged must be upon its face, were it genuine, of some apparent legal efficacy for injury to another, or as Mr. Wharton expresses it: "Should be one which

would expose another to legal process" (1 Whar. Cr. L. § 680). A mere *brutum fulmen,* on its face utterly valueless and of no binding force or efficacy for any purpose of harm, liability or injury to any one cannot be the subject of forgery. Commonwealth v. Dallinger, 118 Mass. 439; Roode v. State, 5 Neb. 174, S. C. 25 Am. Rep. 475; Wall's Case and Moffatt's Case, 2 East P. C. 953, 954; People v. Shall, 9 Cowen 778; People v. Galloway, 17 Wend. 540; Smith v. State, 29 Fla. 408, 10 South. Rep. 894. And it is equally true that under our statute, section 1950 Revised Statutes: "No estate or interest of freehold or for a term of years of more than two years, or any uncertain interest of, in or out of any messuages, lands, tenements or hereditaments shall be created, made, granted, transferred or released in any other manner than by deed in writing, signed sealed and delivered in the presence of at least two subscribing witnesses by the party creating, making, granting, conveying, transferring or releasing such estate, interest or term of years." And it is also true that the instrument alleged to have been forged in this case does purport to grant an estate in land for a term of more than two years, and is executed with only one subscribing witness and is, therefore, under the above statute, invalid and ineffectual as a lease for such term. I Blackstone's Com. (by Lewis), Bk. 2, 103, 140; The Cary Hardware Co., v. McCarty, 10 Col. App. 200, 50 Pac. Rep. 744; Stratton v. Pettit, 16 C. B. Rep. (81 Eng. C. L.) 420; Webster v. Blodgett, 59 N. H. 120. But though it is invalid and ineffectual, under the quoted statute, as a conveyance of an estate in the land for a term of three years, still some authorities hold that it may, were it genuine, have become in equity the

foundation of an action for specific performance (Waterman on Specific Per. of Cont. § 14) as a contract for a lease (1 Warvelle on Vendors, p. 342 and citations; Bond v. Rosling, 8 Jurists (N. S.) 78 Varwick, v. Edwards, 1 Hoff. Chy. 381), and, therefore, capable of injury to another; or, if the latter proposition be not tenable, the instrument forged, had it been genuine, was certainly effective as a license to make entry upon the land, and would have effectually shielded the parties entering under it from the charge of tresspassing, and, upon its face was made assignable, and calculated to deceive an assignee thereof and to likewise shield the assignees thereof from any charge of trespassing on an entry under it (Muskett v. Hill and Tozer, 5 Bing. (35 Eng. C. L.) 694; Floyd v. Ricks, 14 Ark. 286, S. C. 58 Am. Dec. 374; Jenkins v. Lykes, 19 Fla. 148) and viewed, either as a contract for a lease specifically performable in equity, or as an assignable license merely, the instrument alleged to have been forged here was, had it been genuine, not an absolute nullity, but was effective for harm and injury to another, and was, therefore, the subject of forgery. The second and seventh grounds of the motion to quash are untenable according to the best reasoned authorities. Bennett v. State, 62 Ark. 516, 36 S. W. Rep. 947, and cases there cited. As to the sixth ground of the motion to quash, the indictment does not allege that Judge Trogden as the person intended to be defrauded by the forgery, therefore it could make no difference whether he owned the lands described in the forged lease or not. The paper was calculated to dceive and defraud other persons than Judge Trogden as is alleged in the indictment, and this objection is untenable. Rex. v. Goate, *supra*. Although the instrument

forged here is ineffectual under the provisions of our statute as a lease for a term of three years, because not witnessed by two subscribing witnesses, yet it is under seal, and is a deed or writing obligatory within the meaning of our forgery statute. The remaining grounds of the motion to quash are untenable, and need not be specifially discussed.

The second assignment of error is the ruling of the court, *sua sponte*, striking out a plea in abatement filed by the defendant. This plea alleges in substance that W. H. Ellis, who, as Acting State Attorney, appointed as such by the court in the place of the regular State Attorney who was sick and absent from the court, drew and signed the indictment, and who alone advised the grand jury in the matter of considering and finding the bill, is the employed and retained legal counsel of the prosecutors, the Aspalaga Naval Stores Company, a firm composed of W. B. Roddenberry, W. J. Singletary and J. D. Russ, and as such privately retained counsel appeared on behalf of the said prosecutors and prosecuted the defendant at the preliminary trial for such offence; and was and is their private counsel in a civil suit pending in their favor against the defendant involving the same matters involved in this prosecution, and is their retained and employed counsel in the matter of this prosecution. There was no error in this ruling. Section 1354 Revised Statutes authorizes the Circuit Judge to appoint a prosecuting attorney from among the members of the bar, whenever the official State Attorney shall be absent from any regular or special term of court; or, if present, whenever he shall from any cause be unable to perform the duties of his office. This statute also requires

that such appointee shall be sworn to faithfully discharge
the duties of the State Attorney; and provides that he
shall have as full and complete authority, and his acts
shall be in all respects as valid as a regularly appointed
State Attorney; and that he shall sign all indictments as
"Acting State Attorney;" and that his powers shall cease
upon the arrival of the State Attorney, or the cessation of
his inability. This statute is assailed here upon the ground
that it violates section 27 of Article III of the constitu-
tion of 1885 which requires that the legislature shall pro-
vide for the election by the people or appointment by the
Governor of all State and county officers not otherwise
provided for by the constitution. This contention is
wholly untenable. The statute does not contemplate the
filling of a *vacancy in the office,* but the exigency intended
to be met by it presupposes that the *office is already filled*
by an *incumbent officer,* or will be filled in the constitu-
tional way and it undertakes to supply a competent per-
son *temporarily* to perform the official duties of that office.
It does not undertake to create an *officer* nor to *fill* an
*office,* in the sense contemplated by this provision of the
organic law requiring their election by the people or ap-
pointment by the Governor. It is besides well-settled
that even in the absence of such a statute trial courts, hav-
ing criminal jurisdiction, have an inherent power, in the
exercise of such jurisdiction, to appoint some one to rep-
resent the interests of the State temporarily during the
absence or inability to act of the regularly chosen officer
whose official duty it is to so represent the State's inter-
ests. White v. Polk County, 17 Iowa 413; Dukes v.
State, 11 Ind. 557; S. C. 71 Am. Dec. 370; Keithler v.
State, 10 Smedes & M. (Miss.) 192; Tesh. v. Common-

wealth, 4 Dana (Ky.) 522; State v. Johnson, 12 Tex.
231; State v. Gonzalez, 26 Tex. 197. At the common
law to be the privately retained counsel for the prosecuting
private individual was not recognized as a disqualification
of such attorney for conducting the prosecution on behalf
of the crown, but all prosecutions were formerly conduct-
ed on behalf of the crown by the privately retained coun-
sel of private prosecutors. This statute does not prescribe
any other qualification or disqualification for such tempor-
ary prosecutor than that he shall be a member of the bar.
The fact that he may have been retained by the prosecut-
ing witnesses to prosecute the case does not render him
ineligible to represent the interests of the State in such
prosecution, in the capacity of Acting State Attorney,
provided he has been duly sworn as such Acting State
Attorney as provided by the statute. In the case of Thal-
heim v. State, 38 Fla. 169, 20 South. Rep. 938, it was
held, in effect, that where there was a regular State Attor-
ney, with privately retained counsel assisting him, the
prosecution must be conducted and controlled by such
*official representative of the State,* and not surrendered
absolutely to the control and management of the counsel
of such private parties. With that decision we are still in
accord, but in the case in hand the defendant's plea does
not complain that the State was without an *official repre-
sentative*, or that the management and control of the
prosecution was surrendered into other hands than those
of the *State's official* representative; but its contention is
that the *State's representative* was disqualified to act as
such because he was also the retained counsel in the case
for private parties. As before seen, the statute does not
rcognize such a disqualification; and nothing is alleged

in the plea intimating any improper conduct on the part of the Acting State Attorney; nor the taking of any unfair or undue advantage by him of the defendant in the discharge by him of the official duties of State Attorney. The cases cited from Massachusetts, Michigan and Wisconsin holding the contrary doctrine are grounded on special statutes in those States, and, therefore, have no applicability.

The third assignment of error is the denial of the defendant's motion for a continuance of the cause. This motion was predicated on the same grounds substantially set up in the plea in abatement already discussed, *viz*: that the State was represented in the prosecution only by the Acting State Attorney, W. H. Ellis, and by J. M. Calhoun, both of whom were the privately retained counsel for the prosecuting witnesses. For the reasons already mentioned in the discussion of the plea in abatement, there was no error in this ruling, even were it admitted that a really existent disqualification of the State's representative in a prosecution for crime could ever, under any circumstances, furnish ground to the defendant to claim the right to a continuance, which we think is a very doubtful proposition particularly when, as has been already seen, both the statute and the inherent authority of the court furnish ample resources from which to supply a prosecuting representative for the State in any case of emergency.

On the cross-examination of the State's witness, W. B. Roddenberry, the defendant asked the following question: "Did not Edgar King inform you or your firm that the lease in question alleged to be forged in the indictment, was only a copy, and that the genuine lease had been for-

warded to Judge Trogden for signature, prior to your making the final payment of twenty-nine hundred dollars for the property conveyed to you by W. B. McMillan?" It was proposed by this question to draw from the witness the fact that on the day the final payment was made for said property (the forged lease being part of it) so purchased by the Aspalaga Naval Stores Company, and before such payment was made, the defendant informed the said Aspalaga Naval Stores Company (the witness Roddenberry being a member of said firm) that the Trogden lease, the instrument alleged to be forged, was not a genuine lease, but only a copy, and that the genuine lease had been drawn and forwarded to Judge Trogden for his signature and had not been returned and received at the time final payment was made. Upon objection by the State the question was excluded by the court, and such ruling constitutes the fourth assignment of error. This testimony should have been admitted. The indictment alleges specifically that the alleged forgery by the defendant was with the intent to defraud the Aspalaga Naval Stores Company, in which firm the witness was a partner. This evidence bore upon this alleged intent, and tended to show an absence of such intent so far as that company was concerned. We do not mean to be understood that its exclusion would be cause for reversal under the circumstances in proof in the absence of other errors in the trial, but it was evidence properly admissible. State v. Marco, 32 Oregon, 175, 50 Pac. Rep. 799.

The fifth, sixth, seventh and eighth assignments of error are predicated upon the exclusion by the court of the four following questions propounded by the defendant to his own witness, one S. V. Baker: 1st. What state-

43 Fla. 16.

ment, if any, was made by W. B. McMillan at the time
he filled out the lease and signed Judge Trogden's name
thereto? 2nd. What was said by McMillan to the de-
fendant E. H. King, if anything, in order to procure the
said King to sign the instrument alleged to be forged as
a witness? 3rd. Who, if any one, asked the defendant
Edgar King to sign such an instrument as a witness? 4th.
It anything was said by the defendant Edgar King or
W. B. McMillan at the time defendant signed such lease
as a witness, state what was said by either party? This
witness had testified that he was present at the making up
of the forged lease by W. B. McMillan, and saw McMil-
lan fill it up and sign Judge Trogden's name to it, and that
at the time he did so the name of Edgar King was not
signed to it as a witness. At this juncture the first of the
refused questions was asked of the witness. The fact
sought to be elicited by this question was that McMillan,
when he filled out the forged lease and signed
Trogden's name thereto, remarked to the witness, the
defendant King not being then present, that he
expected to use it temporarily as a copy, with
the Gulf Naval Stores Company, of the Trog-
den lease which had been forwarded to Judge
Trogden for his signature, as he had closed con-
tract to lease the lands with Mrs. Trogden and expected
the original within a few days, and thought there was no
harm in so doing, and asked witness if he thought there
was. There was no error in the exclusion of this ques-
tion? The defendant King was shown not to have been
present when the occurrence and conversation inquired
about transpired, and he is not connected with it in any
way. The relevancy of it to the defendant's case is not

shown. The witness then testified that after McMillan signed the lease in Judge Trogden's name he laid it down on his desk, and that fifteen or twenty minutes afterwards the defendant King came into the commissary where he and McMillan were, and while there, signed his name to the paper as a witness. At this juncture the three remaining excluded questions were propounded The facts proposed by these questions to be elicited were, that when the defendant same into the commissary McMillan said to him, "Edgar, the Gulf Naval Stores Company are shoving us up for leases, and I have filled out the Trodgen lease, as we have closed a contract lease for the lands with Mrs. Trogden and want to use it as a copy with the Gulf Naval Stores Company for a few days until we receive the original, and I want you to sign your name as a witness," and that the defendant replied,"I don't know about that, but I reckon as the lease contract is closed and the original is here, or will be in a few days,I do not think there will be anything wrong in using this (referring to the alleged forged lease) as a copy of the original," and that the defendant then signed the lease as a witness at the request of McMillan, after it had been all filled out and Judge Trogden's name signed to it by McMillan. There was error in this ruling. The testimony was admissible because relating to matters which were parts of the *res gestae.* 1 Bishop Crim. Proc. § 1086; State v. Marco, 32 Oregon 175. 50 Pac. Rep. 799. Had it been admitted and believed by the jury to be true, and had they believed further as the excluded testimony had a tendency to prove that the defendant King had no substantial interest in the forgery or its objects and purposes, and did not coun-

sel, advise, aid or assist in its perpetration, otherwise than the mere subscribing of his own name as an ostensible witness to such instrument previously forged by another without his knowledge, he would not be guilty of forgery, though at the time he signed his name as a witness he knew it was a forgery, and why? As we have before shown, the instrument forged is valid only as a possible contract for a lease, or as a license to enter the lands therein described, and viewed as either a contract for a lease or as a license to enter, a subscribing witness was not an essential or material feature of its execution or validity, and did not add anything to its effectiveness or validity as such contract for or license to enter. In this view it may have subjected the defendant to the charge of aiding and assisting in the *utterance* of the forged instrument, or of some other crime, but not to the forgery itself. The indictment charges him with *forgery* only and not with the *utterance* of a forgery, and no conviction for *utterance* can be had on an indictment charging only the forgery.

The ninth assignment of error is the overruling of the defendant's motion to declare a mistrial and to discharge the jury. This motion was presented at the close of the evidence in the case and was predicated upon the proofs in the case going to establish the fact that W. H. Ellis, the sworn Acting State Attorney who conducted the prosecution was the privately retained counsel of the prosecutors, the Aspalaga Naval Stores Company, in the prosecution of the case; and because J. M. Calhoun, another attorney who assisted him in the prosecution was also the privately retained counsel of said company in a pending civil suit, brought by said company against de-

fendant, involving the same subject-matter at issue in this case. For the reasons already given in the discussion of the defendant's plea in abatement, there was no error in this ruling.

The tenth assignment of error is the giving by the court of the following charge: "In order to establish the fendant's guilt it is necessary for the State to prove beyond a reasonable doubt that the instrument described in the indictment is a writing obligatory; that it was not signed by Judge Trogden or any one for him with his consent, and not afterwards ratified by him, and that the defendant made all of it, or a distinct part of it, and thereby intended to defraud the Gulf Naval Stores Company or the Aspalaga Naval Stores Company." The contention made here is that this charge is applicable to a case where there is a principal and an accessory to the same crime, and that while it states a correct proposition of law, it is not applicable to the facts of the case. This contention can not be sustained. According to the evidence more than half of the forged instrument was in the handwriting of the defendant, and the balance in the handwriting of McMillan or some other person. That portion of the body of the paper in defendant's handwriting is a very material part of the document, and if he wrote it with the intent charged in the indictment, and with the intention that McMillan or some one else should complete the document, and it was so completed, he would be a principal in the forgery. It is true the defendant's testimony tends to show that he wrote what he did innocently and with no intent to defraud and with no knowledge that McMillan or another would complete the paper and sign Trogden's name to

it but the credibility of this testimony was a question for the jury, and the court was justified in giving a charge based upon the hypothesis that his testimony was untrue. The instruction so far as it goes is correct, though it does not state all the circumstances under which a party may become a principal in forgery. If a party be present aiding, advising, assisting or encouraging another to commit a forgery, he is guilty of forgery though he writes no part of the instrument. The incompleteness of the instruction complained of does not operate against defendant, but in his favor, and he has no ground to complain.

The defendant requested the court to give ten special instructions containing distinct propositions of law, three of which were given and seven refused. The exception taken to the refusal to give the seven was general, and it is settled here that where a general exception is taken to the refusal to give two or more separate instructions containing distinct propositions of law, the exception thus taken is not available if any one of such charges was properly refused. McCoggle v. State, 41 Fla. 525, 26 South. Rep. 734. The eighth request refused was erroneous in that it required the jury to find an intent to defraud both the Gulf Naval Stores Company and the Aspalaga Naval Stores Company, in order to convict the defendant, while the law is that if a forgery was committed with intent to defraud either of the parties named the offence would be complete. For this reason it was properly refused, and as one of the requests was properly refused, it becomes unnecessary that we examine the others the refusal to give which is assigned as error.

The judgment is reversed and a new trial awarded.