Norman Joseph Wise Hepburn, Alias Dr. Samuel H. Johnson, *Petitioner,* v. L. F. Chapman, Superintendent of State Prison, *Respondent.*

149 So. 196.

Division B.

Opinion filed March 16, 1933.
Opinion on Re-hearing filed July 6, 1933.

134

*Zach H. Douglas* and *Francis B. Bull,* for Petitioner;

*Cary D. Landis, Attorney General,* and *Roy Campbell, Assistant,* for Respondent.

BROWN, J.—The petition, upon which a writ of habeas corpus was issued in this case by a Justice of this Court, alleged that the information under which petitioner was tried and convicted in the Criminal Court of Record of Palm Beach County at the July term, 1932, of said court, charges no offense known to the laws of the State of Florida; that the instrument of writing set forth therein and alleged to have been forged is not a "writing obligatory" under Section 7324 C. G. L., and that such writing is not such as is the subject of forgery under the criminal laws of this State. The certified copy of the information upon which petitioner was convicted, attached to the petition, omitting the formal caption and introductory portions, charges that the petitioner on March 11, 1932, in Palm Beach County, Florida, "did feloniously, unlawfully and falsely make, forge and counterfeit a certain writing on paper to-wit:

"3/11/32.

"3/6 Stipman's Arcade, 11/32.

"Buick Garage:

"Sir:

"We will take care of Dr. Samuel Johnson's bill tomorrow.

"Dr. is perfectly alright. Will send you a check anyhow tomorrow.

"SCHRODERS & DICKOFF,

"By Eric Schroder.

"3/11/32."

with intent then and there to injure and defraud Eric Schroder and Joseph Dickoff, and other persons to the County Solicitor unknown," etc.

The respondent in his writ states that he holds the pe-

titioner in his custody under and by virtue of a commitment issued out of and under the seal of the Criminal Court of Record of Palm Beach County, Florida, and attaches to the writ a copy of the judgment of conviction, and sentence to imprisonment in the State Penitentiary for a period of three years.

In support of the contention that the information charges no offense known to the law of this state, Counsel for petitioner cite the case of State v. Russell, 51 Fla. 124, 40 So. 625. One of the species of written instruments which are made the subject of forgery by the statute (now Sec. 7324 C. G. L.) is an order for money or other property. In the Russell case, the plaintiff in error, John Russell, alias "Humpie," was charged by the indictment with uttering and publishing as true and presenting for payment to one J. L. Crutchfield, with the intent to injure and defraud Jim Gaddy and J. L. Crutchfield, a certain forged and counterfeited writing for the payment of money which was in substance as follows: "Mr. Crutch, let Humpie have three dollars for me, Jim Gaddy." A motion to quash the indictment was made and overruled. The defendant excepted to this ruling, and sought review by writ of error. This court held that the trial court erred in denying the motion to quash and reversed the judgment of conviction. The substance of the opinion is very well summed up in the headnotes which read as follows:

1. "There are two kinds of orders for the payment of money or the delivery of goods which may be the subjects of forgery, viz: those which are such on their face, and those which may be shown to be such by averment and proof. If on the face of the writing there is all that belongs to an order, the law regards it as such, though in fact the drawer had no funds and the drawee was under no obligation to respond. The question whether or not particular

words bring a case within this branch of the definition may be nice and delicate. The tests are that looking simply at the writing there must appear on its face to be a drawer having a disposing power over the fund or goods, a person under obligation to obey, and one to whom delivery or payment is to be made sufficiently described to exclude uncertainties of meaning. If the latter is not mentioned by name in the writing, or is imperfectly described, these uncertainties may be made certain, by averment and proof.

2. "Where a party is charged with forging or uttering an alleged forged writing which is in these words, viz: 'Mr. Crutch, let Humpie have three dollars for me,' the indictment should by proper averments explain who was meant by 'Mr. Crutch,' as well as who was meant by 'Humpie,' and these explanations should be followed up by proof at the trial."

Counsel for petitioner also cite 2 Wharton's Criminal Law, 1247, Sec. 948, where it is said:

"Where an instrument is incomplete on its face, so that as it stands it cannot be the basis of any legal liability, then, to make it the technical subject of forgery the indictment must aver such facts as will invest the instrument with legal force. Thus, where an indictment charged that A did feloniously and fraudulently forge a certain writing as follows: 'Mr. Bostwick, charge A's account to us, B and C,' with intent to defraud B and C, it was held that the indictment was not valid without charging that A was indebted to Bostwick, as there could be no fraud unless a debt existed."

Counsel also cite to like effect, Rice Criminal evidence, Vol. 3, 772-773; also Johnson v. State, 47 Fla. 37, 36 So. 166, and West v. State, 45 Fla. 118, 33 So. 854; Barker v. State, 78 Fla. 477, 83 So. 287. In the last named case the order for the payment of money as set out in the indictment was held sufficient. None of these cases deal with a "writing

obligatory," such as the one here involved, in the nature of a promise or agreement to answer for the debt, default or miscarriage of another.

Counsel for petitioner contend that the written instrument in the case at bar is only addressed to "Buick Garage," and that this is not a definite designation of any natural person, association or corporation anywhere within the State of Florida; also that the instrument set forth in the information refers to Dr. Samuel Johnson, whereas the defendant is charged under the alias of Dr. Samuel H. Johnson, which variance is not explained by any allegation in the information. They further insist that the writing set forth in the information is of no binding force or efficacy for any purpose, and could impose no liability upon or injury to anyone, even had it been genuine, and hence could not be the subject of forgery. In this conection counsel cite case of State v. Humphreys, 29 Tenn. 443, where the instrument alleged to have been forged was as follows:

"Mr. J. G. Bostick:

"Will you please charge Mr. J. S. Humphreys' account to us, up to this date, February 7, 1848. (Signed)

"Twyman & Tannehill."

And the Tennessee Court held that the instrument

"Could not be of any benefit to defendant, or prejudice to the other parties, unless the defendants were indebted at the time to Bostick, and it could have no other effect, if genuine, but to discharge that indebtedness. This is an important and material ingredient in the description of the offence charged, and because there is no averment in the indictment of such indebtedness, we think it does not sufficiently charge the offence."

Perhaps the objections here raised to the sufficiency of the information might have been good as grounds for a motion to quash, but that does not mean that they are good

grounds for holding the information, and the judgment of conviction, based thereon, null and void in habeas corpus proceedings. "Where an indictment, information or complaint, though inartificially drawn, shows an evident attempt to state the essential facts which constitute the crime sought to be charged, a defect in the statement will not warrant the discharge of the defendant on habeas corpus. To hold otherwise would be not only to adapt the writ to the ordinary uses of a proceeding in error, but to warrant, by its means, intolerable interference with the ordinary and regular process of criminal prosecutions, and to substitute the writ for a demurrer or motion to quash, which the law will not permit. The inquiry in such case is not whether there is in the indictment such specific allegation of the details of the charge as would make it good on demurrer, but whether the indictment describes a class of offenses of which the court has jurisdiction, and alleges the defendant to be guilty. If, however, an indictment, information or complaint is void, a trial thereon is also void and the prisoner is entitled to be discharged on habeas corpus. Thus it has been held that when the facts charged or attempted to be charged do not constitute any public offense, the defendant will be discharged, as this goes to the jurisdiction of the court." 12 R. C. L., 1202-1203. See also 12 R. C. L., 1242, where it is said: "So also it is well settled that mere errors or irregularities in warrants, indictments, information, or complaints are not reviewable on habeas corpus, and that whether the offense is sufficiently alleged is not a proper subject matter for inquiry on the hearing of such writ. Such a question is necessarily one of law which must be decided by the court in which the case originates, and is therefore clearly within its jurisdiction. Neither will the sufficiency of an indictment, as a matter of technical pleading. be inquired into on habeas corpus. But it has been held that the

court will examine an indictment for the purpose of determining whether it charges any offense known to law."

Our own decisions are much to the same effect. Thus in Ex Parte Prince, 27 Fla. 196, 9 So. 659, this Court held that habeas corpus does not lie to correct mere irregularity of procedure, where there is jurisdiction; that it is not a remedy for relief against indictments charging criminal offenses defectively or inartificially; that where a statute punishes the larceny of "any money or any bank note," and the indictment charges the larceny of "divers bills, commonly known and denominated as National currency of the United States of America, of divers denominations," giving their denomination and value, the sufficiency of the indictment cannot be inquired into by habeas corpus. And in Jackson v. State, 71 Fla. 342, 71 So. 332, it was held that the right to attack an information by writ of habeas corpus is more limited than is permitted by motions to quash or in arrest, and may avail only when the offense charged does not constitute a crime by reason of the unconstitutionality of the statute invoked, or where there is a total failure to allege the crime under any statute; that inartificiality in pleading will not avail. To like effect is the case of In re Robinson, 73 Fla. 1068, 75-70 So. 604, wherein it was said that the writ of habeas corpus cannot be used as a substitute for a motion to quash, or a writ of error or an appeal. In that case it was held that where an information alleged that the defendant, being the owner of an automobile, did use and operate the same in the state and county more than fifteen days without paying the license tax required by law, that if the information was defective because it did not allege that the defendant's automobile was operated upon the public highways of the county, such defect would not render a proper conviction under it illegal, even though it may have

been erroneous and subject to reversal on writ of error. See also Bass v. Doolittle, 93 Fla. 993, 112 So. 892.

Does the information in this wholly fail to charge a criminal offense under Sec. 7324, C. G. L., so as to nullify the judgment of conviction and authorize the petitioner's release on habeas corpus? We hardly think so. If the instrument set forth in the information can be construed to have had an apparent legal efficacy for injury to another, as a "writing obligatory," provided it had been genuine, then the petitioner is not entitled to an order of discharge; for in all other respects the information substantially follows the language of the statute. In King v. State, 43 Fla. 211, 31 So. 254, this court held that:

"A mere *brutum fulmen*, on its *fulmen*, on its face utterly valueless, and of no binding force or efficacy for any purpose or harm, liability or injury to anyone, cannot be the subject of forgery. In order to be the subject of forgery the instrument forged must be upon its face, were it genuine, of some apparent legal efficacy for injury to another, or, as Mr. Wharton expresses it: "Should be one which would expose another to legal process.'

"Though the instrument forged purports upon its face to grant an estate in land for a term of more than two years, but is invalid and ineffectual as a lease for such term because it is witnessed by only one witness when the statute requires two to give it effectiveness as such, yet if the instrument, were it genuine, could be specifically enforced in equity as a contract for a lease, or if it was effective as a license to make entry upon the land described therein, so as to shield parties entering it from the charge of trespass, it is not an absolute nullity, but is effective for injury to another, and is, therefore, the subject of forgery."

In this connection, see also 12 R. C. L., 156-157; 26 C. J. 942.

And in Hawkins v. State, 28 Fla. 363, 9 So. 652, it was held that an indictment charging forgery by the alteration of a written instrument need not allege that the order was presented to and delivered to the payee, or that he had it in his possession, nor that it was presented to, accepted or paid by the drawee, or that the payee received payment. It was also held that it is not necessary to the crime of forgery that injury should have resulted to anyone; the intent to defraud being the essence of the offense in this regard.

That the writing set forth in the information is addressed merely to "Buick Garage," does not make the information void. It is a matter of common knowledge that individuals and partnerships frequently carry on a business under names and styles of a general nature. Good pleading would probably have required that the information allege the name or names of the persons conducting business under the name and style of the "Buick Garage," the location or address of same, and the further fact that the defendant was indebted to the person or persons doing business under that name in a certain designated sum, but objections raising these defects should have been made by motion to quash; not by habeas corpus after conviction and sentence. These are defects such as a defendant can waive by failure to interpose seasonable and proper objections before going to trial. The allegation in the information that the offense was committed in Palm Beach County indicates that the Buick Garage was located in that county, and the allegation that the instrument was forged *with the intent to defraud* could not have been proven if it had not appeared from the evidence that there was some concern doing business under that name. There is a presumption of law in favor of the validity and regularity of the proceedings of a court which has jurisdiction of the parties and the subject matter whenever collaterally

attacked, and mere defects in pleading will not avail on such collateral attack. 15 R. C. L. 864, 875.

Nor does the failure of the writing to express the consideration for the promise to answer for the debt of another render it a void instrument. Our statute of frauds (Section 5779 C. G. L.) provides that no action shall be brought whereby to charge a defendant "upon any special promise to answer for the debt, default or miscarriage of another * * * unless the agreement or promise upon which action shall be brought, or some note or memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized." Thus it appears that while our statute requires the promise of agreement to answer for another's debt, or some note memorandum thereof, to be in writing, it does not expressly require the consideration to be set forth in such writing. There is a divergence of authorities in the various jurisdictions in this country on this question, largely due, no doubt, to the differences in the various state statutes, but in 27 C. J. at page 282, it is said that, "It is held uniformly that the consideration need not be stated in the memorandum where the statute of frauds merely requires the 'promise or agreement' to be in writing." See also 25 R. C. L., 661-2, Sec. 296. There seems to be but one Florida case dealing directly with this question, to-wit, Forman v. Bigelow, 1 Fla. 281. While this case is an old one, it does not appear to have ever been overruled. It was held in that case that a "promise to pay the debt of another, made in writing and signed by the party to be bound, but without expressing the consideration on which the promise is founded, is sufficient, and is not within the statute of frauds of this State." The holding on this point in the cited case was referred to in Conroy v. Woodcock, 53 Fla. 582, 43 So. 693, with apparent approval, but with the added comment that whether the

same rule would apply to a promise to convey land, or whether it would apply when the memorandum undertakes to set out a consideration and leaves it indefinite and uncertain, needed not to be decided in that case.

Under the principle laid down in King v. State, *supra*, and the other authorities herein above cited, we cannot see our way clear to hold, especially on collateral attack in habeas corpus after conviction and judgment, that the paper writing described in the information utterly fails to show any "apparent legal efficacy for injury to another." Therefore it cannot be said that the information so wholly fails to charge any criminal offense under the laws of this State as to nullify the judgment of conviction and the commitment under which the petitioner is held in custody by the respondent and to authorize his discharge on habeas corpus.

It follows that the writ must be dismissed and the petitioner remanded to the custody of the respondent.

It is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

### ON RE-HEARING

BROWN, J.—On the original hearing it was contended that the instrument of writing set forth in the information, and alleged to have been forged, was not a writing obligatory, within the meaning of those terms as used in Section 7324 C. G. L., for certain reasons discussed in our former opinion. On re-hearing it is contended that such writing, as described and set forth in the information, is not a writing obligatory because it is *not under seal*. While this point was not argued on the original hearing, it was perfectly obvious from the record that the written instrument set forth in the information, and alleged to have been forged by the defendant, was not a sealed instrument, and the significance of that fact was overlooked both by counsel and the Court.

In view of the general allegation in the petition for the writ of habeas corpus that said instrument is not a writing obligatory under section 7324 C. G. L., and not such a writing as is the subject of forgery under the criminal law of this State, the question of law now contended for was impliedly raised, and in as much as it concerns a fundamental question involving the liberty of the petitioner, we deem it our duty to consider the effect of the absence of a seal from the instrument upon the rights of the petitioner, in spite of the failure to argue the question or call it to the attention of this Court upon the original hearing.

It has been contended all along by counsel for the petitioner that the information, in order to be valid, must have set forth some instrument made the subject of forgery by the statutes, and that the only class of instruments described in the statute which could possibly apply to the instrument set forth in the information is that class of instruments comprehended by the words "writing obligatory" as contained in the statute, and that the instrument as set forth in the information did not constitute a writing obligatory, for the reasons discussed in our previous opinion; and now the additional reason above named is insisted upon. The reasons advanced by the petitioner on the original hearing were not sufficient, as pointed out in our previous opinion, in a collateral attack by habeas corpus, to authorize the discharge of the petitioner from custody, and as to the points of law thus raised and discussed we see no good reason for departing from the disposition made of them in our former opinion.

It was impliedly, if not expressly, admitted in our previous opinion, that the instrument alleged to have been forged must have constituted a "writing obligatory" in order to come within any of the classes of instruments made the subject of forgery by the statute referred to, and we

are still of that opinion. If it were not a writing obligatory, then it does not come within the statute at all. It might be well at this point to set out the statute in full, as it appears in the Compiled General Laws of 1927.

"7324. (5206) Forgery.—Whoever falsely makes, alters, forges or counterfeits a public record, or a certificate, return or attestation of any clerk or register of a court, public register, notary public, justice of the peace, town clerk or any public officer, in relation to a matter wherein such certificate, return or attestation may-be received as legal proof; or a charter, deed, will, testament, bond or writing obligatory, letter of attorney, policy of insurance, bill of lading, bill of exchange or promissory note, or an order, acquittance, or discharge for money or other property, or an acceptance of a bill of exchange or promissory note for the payment of money, or any receipt for money, goods or other property, or any passage ticket, pass or other evidence of transportation issued by a common carrier, with intent to injure or defraud any person, shall be punished by imprisonment in the State penitentiary not exceeding ten years, or in the county jail not exceeding one year. (Ch. 1637, Acts 1868, Sub-Ch. 5, Sec. 1, consolidated with Ch. 4202, Acts 1899, Sec. 6.)"

We are also disposed to concede the correctness of the contention made in behalf of petitioner on this re-hearing that the word "writing obligatory" imports a written instrument under seal. That appears to be settled, technical meaning of those terms, and as criminal statutes must be strictly construed, the Legislature must be deemed to have used these words in their technical, legal sense. This is indicated by the fact that in the statute these words immediately follow the word bond, in this wise: "bond, or writing obligatory," etc. Some of the definitions of these words

as collated from the decisons in Vol. 8 of Words and Phrases, at p. 7543 are as follows:

"The words 'writing obligatory' are technical, and imply a written instrument under seal. Clark v. Phillips (U. S.) 5 Fed. Cases 906; Stull v. Wilcox, 2 Ohio St. 569, 573."

" 'Writing obligatory' is practically synonymous with 'bond' and implies and includes the ideas of signing and sealing.

"A writing obligatory is a bond, or some written obligation under seal. It is a term that is never applied to simple contracts, though they may be in writing. Luna v. Mohr, 1 Pac. 860, 864, 3 N. M. (Johns.) 56."

" 'Writing obligatory' has not come into common use in a sense different from its technical use. The expression is rarely used, even by the profession, except in pleading, and then always as signifying a writing under seal. Watson v. Hoge, 15 Tenn. (7 Yerg.) 344, 351."

The definition as given in Bouvier's Law Dictionary is as follows: "Writing obligatory. A bond; an agreement reduced to writing, by which the party becomes bound to perform something or suffer it to be done." It thus' appears that, strictly speaking, the instrument set forth in the information, being an unsealed instrument, is not a writing obligatory, and hence on its face it does not come within that class of instruments made the subject of forgery by the statute. The only case which we have been able to find to the contrary of this conclusion, is the case of Hickson v. State of Nebraska, 54 L. R. A. 327. It was held in that case an instrument reading: "Mr. Sage: Please let this boy have a single rig, a good one, and oblige. I will bring it back myself. (Signed) George Clinger." constituted a writing obligatory, within the meaning of the Nebraska statute. However, the point here under consideration does not ap-

pear to have been considered in that case, and no authorities are cited, and we are not disposed to follow it.

The question arises whether, in spite of the lack of a seal, the instrument set forth in the information can be construed to have any legal efficacy, *as a writing obligatory*, for injury to another, provided it had been genuine, so as to bring it within the statute, under the principles laid down in the case of King v. State, 43 Fla. 211, 31 So. 254, which case was discussed and quoted from in our former opinon. We are inclined to answer this question in the negative, upon the ground that, on account of the absence of a seal, the writing set forth in the information here involved is not a writing obligatory at all. Though the instrument involved in the King case was held ineffectual as a lease for more than two years because it was witnesed by only one witness when the statute required two witnesses, it was held to be the subject of forgery under the statute, because the instrument, if genuine, could be specifically enforced in equity as a contract for a lease, or was effective as a license to make entrance upon the land described therein, so as to shield parties entering under it from the charge of trespass, and therefore possessed legal efficacy for injury to another. The indictment in that case charged the forging of a writing obligatory, to-wit: a lease of lands therein described, which lease was set out in full, and was executed under seal. However, as above shown, the instrument here in question, because of the lack of seal, was not a writing obligatory at all, and hence could not possess any legal efficacy as a writing obligatory; and although, as pointed out in our previous opinion, it had some apparent legal efficacy as a written promise to pay the debt of another, this fact does not bring it within any of the classes of written instruments made the subject of forgery by the statute above quoted. It is neither a writing obligatory, for the reason above given, nor is it a prom-

issory note. See Section 6923 C. G. L. Indeed, as above stated, it does not appear to fall within any of the classes of instruments designated by the Acts of 1868 and 1899, now appearing as Section 7324 C. G. L.

However, it does not necessarily follow that the information failed to state any offense known to the law of Florida. In 26 C. J. at p. 897, it is said: "The offense of forgery is now defined in many states by statute. In such case the statute does not repeal the common law, but merely enlarges the offense or prescribes a different punishment, in the cases enumerated in it, from that provided by the common law." And in 12 R. C. L. p. 139-140 it is said:

"By Blackstone (3 Com. 247) forgery is declared to be the fraudulent making or alteration of a writing to the prejudice of another man's rights. A definition very generally accepted describes forgery as the false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. Other definitions may be found, but they do not add materially to this general description of the offense, which, obviously, is merely a statement of the essential elements of the crime, viz., a false making of some instrument in writing, a fraudulent intent, an instrument apparently capable of effecting a fraud. The grosser crimes such as murder, arson and larceny, are easily defined and classified. The same is true of the more common forms of forgery, and of many purely statutory crimes. Experience has shown, however, that no generic definition of forgery can be comprehensive enough to include all the crimes that may be committed by the simple use of pen and ink. And for this reason legislatures have found it necessary to frame statutes broad enough to include in the category of forgeries many acts which are criminal in their tendency and effect, but do not fall within the earlier definitions of that crime.

According to some authorities forgery was regarded at common law as a misdemeanor and not as a felony; and while under both the English and American statutes it was early made a felony in many of its aspects, at least within the later and modern acceptation of a 'felony,' it has been held that a forgery which is not within the statute is a misdemeanor and punishable only as such, which distinction, however, cannot be made in states in which common law crimes are not recognized."

The common law definition for forgery is also given in 26 Corpus Juris as follows:

"The false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability."

See also 2 Bishop Criminal Law, Section 523. This definition has been substantially adopted as a common law definition of forgery in this State, with the addition, after the words, "legal efficacy," of the words "for injury to another," Kinb v. State, *supra;* Harrell v. State, 70 Fla. 220, 83 So. 922. It is also very generally, and we think correctly, held, that forgery was a misdemeanor at common law, and therefore the forgery of an instrument not named in the statute is punishable only as a misdemeanor and not as a felony. 26 C. J. 897, 980. Under our statute, 7105 C. G. L. construed in connection with Sec. 25 of Art. XVI of our Constitution, any crime punishable by death or by imprisonment in the State Prison is a felony, and every other offense is a misdemeanor; and under Section 7103 C. G. L. whenever punishment by imprisonment is prescribed and the said imprisonment is not expressly directed to be in the State Prison, it shall be taken and held to be imprisonment in the County Jail.

But we have statutory provisions with reference to com-

mon law offenses, now appearing as Section 7126 and 7127 C. G. L., which reads as follows:

"7126. (5024.) Common Law. The common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this State where there is no existing provisions by statute on the subject. (Nov. 6, 1829, Sec. 1; Feb. 10, 1832, Sec. 1.)"

"7127. (5025.) Punishment of common law offenses. When there exists no such provision by statute, the court shall proceed to punish such offense by fine or imprisonment, or both, but the fine shall not exceed $500.00, nor the imprisonment twelve months. (Nov. 6, 1829, Sec. 1.)"

It appears that the information in this case is sufficient to charge forgery as a common law offense, in that it charges the forgery of a writing, which, if it were genuine, would be of some apparent legal efficacy for injury to another, and that this was done with the intent to injure and defraud certain named persons. The writing described, not belonging to any of the classes described in Section 7324 C. G. L., which makes the forgery of certain designated instruments punishable as a felony, or any other of our statutes of a similar nature, the petitioner was only subject to such punishment as might have been imposed for the common law offense under Section 7127 C G L., above quoted, construed in connection with Sec. 7103 C. G. L., that is by a fine not exceeding $500.00, or by imprisonment in the county jail, not exceeding twelve months, or both. Therefore, the sentence imposed in this case, as distinguished from the judgment of conviction, was invalid and effective.

It appears from the return that the petitioner was, on July 15, 1932, sentenced to imprisonment in the State penitentiary for a period of three years. It appearing that the petitioner has already been imprisoned for more than eleven

months, in the State penitentiary, and that the maximum term to which he could lawfully have been sentenced was and is only twelve months in the county jail, no good purpose would be subserved by remanding the petitioner to the trial court for the imposition of a new and valid sentence, even though it be conceded that this Court has it within its discretion and jurisdiction to do so. The fact remains that the petitioner is being unlawfully detained by the respondent under an invalid sentence which the trial court had no lawful authority to impose.

For the reasons above pointed out, the former judgment of this Court dismissing the writ and remanding the petitioner to the custody of the respondent is hereby vacated and set aside, and it is now ordered and adjudged that the petitioner be discharged from custody by the respondent.

On re-hearing, former judgment vacated, and petitioner ordered discharged from custody.

DAVIS, C. J., WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.