W. H. ADAMS v. JANE K. ELLIOTT, *et vir*.

174 So. 731.
Opinion Filed April 22, 1937.
Petition for Rehearing Denied June 16, 1937.

*Charles A. Powers* and *Charles A. Powers, Jr.,* for Plaintiff in Error;

*Evan Evans,* for Defendant in Error.

WHITFIELD, P. J.—The writ of error herein was taken to a judgment for damages in favor of the plaintiff, Jane K. Elliott, against the defendant, William H. Adams, for personal injuries caused by the collision at night of an automobile, in which she was riding with her husband, with a piling of a pier used by the defendant riparian upland owner, built over the highway along the beach or foreshore between high and low water mark of the ocean at Atlantic Beach, Florida, there being spaces between the pilings for the passage of vehicles upon the highway on and along the

beach, the highway being authorized by Chapter 10486, Acts of 1925.

The amended declaration in its first count alleges:

"That during the month of May, 1933, and for a long time, to-wit, many years, prior thereto, the defendant was the owner and was in possession of a pier or wharf extending from the bulkhead line at Atlantic Beach in Duval County, Florida, into the waters of the Atlantic Ocean; that said pier or wharf was built approximately 20 feet above the ground and rested upon piling which were approximately eight feet apart; that at said time and for a long time, to-wit, many years, prior thereto, the beach at said point was used as a public highway, and during said time motor vehicles in large numbers were driven on said beach and under said pier or wharf and between said piling, and that said beach was so used as a public highway during many hours of the day and night during said period of time. That the said piling in said highway constituted a peril to the safety of persons operating or riding in motor vehicles on said beach, by reason whereof it became and was necessary that a light or other warning of the presence of said piling be exhibited upon said pier or wharf at night so that such motorists might avoid collision with said piling. That the defendant knew or in the exercise of reasonable care should have known of the said usage of said beach as a public highway, and knew or should have known that the said piling constituted a peril to the safety of persons operating or riding in motor vehicles on said beach in the night time, and knew or in the exercise of reasonable care should have known that a light or other warning of the presence of said piling was necessary upon said pier or wharf at night so that such motorists might avoid collision with said piling.

"That on or about the 15th day of May, 1933, the plaintiff,

Jane K. Elliott, was riding as a passenger in an automobile which was then and there being operated in and upon said beach in the night time.

"And plaintiffs allege that the defendant then and there carelessly and negligently failed and neglected to have and maintain any light or other warning of the presence of said piling in the said beach so used as a public highway, although it was in the night time and dark and foggy, and there was no other light or warning present on said pier or wharf at said time, by reason whereof the automobile in which said plaintiff was riding as aforesaid came into collision with one of said piling and said plaintiff was thereby painfully, seriously and permanently injured, bruised and lacerated in and throughout her head, body and limbs, her skull was fractured, her olfactory and gustatory nerves were injured and destroyed, and her face was disfigured, by reason whereof said plaintiff has suffered great mental and physical pain and anguish and will continue so to suffer for a long time, to-wit, permanently, and said plaintiff was thereby rendered incapable of performing her duties and services by her to be done and performed, and will continue so to be, to-wit, permanently; to the damage of plaintiffs in the sum of $25,000.00. Wherefore, plaintiffs bring this suit and claim $25,000.00 damages of defendant."

In the order sustaining a demurrer to the declaration it is stated that "the Court having common knowledge of location of the property, and it appearing to the Court that the beach at the point where the accident occurred is not a public highway, and it further appearing to the Court that the demurrer to said declaration should be sustained," it was ordered that the demurrer be sustained with leave to amend the declaration. The words "is not a public highway" as used in the interlocutory order did not make the order the law of the case in view of the statute making the beach

at that point a public highway. The original declaration alleged that "the beach at said point was a public highway and was used as a public highway." In the amended declaration the words "was a public highway" were omitted and the words "was used as a public highway" were retained. The second count of the amended declaration alleged damages to the husband; but as the verdict was "against the plaintiff" husband, the second count will not be stated here.

The title of the owner of lands abutting on the ocean extends to high water mark, and such owner's riparian or littoral rights are those allowed by law in the use of the waters and of the beach or shore between high and low water mark. Such uses include access to the water from the abutting property over the beach or shore, and, in common with the public, the rights of bathing, fishing and navigation in the waters subject to appropriate valid governmental regulations. While the primitive uses of the beach or shore are purposes incident to the use of the water of the ocean for bathing, fishing and navigation, the sovereign State may in the interest of the general welfare authorize the beach or shore to be appropriately used as a public highway subject to a reasonable use of the beach or shore for its primary public purposes and subject to lawful governmental regulation. Riparian or littoral upland owners may construct appropriate piers or wharfs over and across the beach to reach the water for authorized purposes; and proper pilings or supports to sustain the pier or wharf over the beach or shore, may be placed upon the beach or shore at proper distances to allow the use of the beach as may be authorized by law. When public vehicular travel along or over the beach or shore is duly authorized, a riparian or littoral owner who negligently maintains on the beach or shore, pier supports or other obstructions to travel on the beach or shore,

and such negligent maintenance is the proximate cause of injury to those who lawfully and with due care are traveling on the beach, the riparian or littoral owner is subject to legal liability for such negligent injury to be redressed by due course of judicial procedure.

Pleas were: not guilty; denies that the pier or piling was not lighted and avers that there was due and sufficient warning of the presence of the pier and it could have been seen by plaintiffs by the exercise of ordinary and due care; denies that the night was dark and foggy; contributory negligence; sole negligence of the plaintiff wife; the wife's joint control of the automobile with her husband in speeding and joy riding; exceeding the lawful speed limit.

Asserting error in the judgment for the plaintiff wife, it is urged that the declaration is bad because it does not allege that the use being made of the beach as a highway was a lawful use by the public, and because of failure to allege any "special and unlawful injury arising out of an infraction by the defendant of the rights of the public as to navigation, commerce, fishing, bathing, or other rights held in trust for the public."

"The rights of the people of the States in the navigable waters and lands thereunder, including the shore or space between ordinary high and low water marks, relate to navigation, commerce, fishing, bathing, *and other easements allowed by law.* These rights are designed to promote the general welfare and are subject to lawful regulation by the States and such regulation is subordinate to the powers of Congress as to interstate commerce, navigation, post roads, etc., and to the constitutional guarantees of private property rights." Brickell v. Trammell, 77 Fla. 544, 82 So. 221. (Italics supplied.)

This rule is in general applicable to littoral rights as well

as to riparian rights. See Sullivan v. Mereno, 19 Fla. 200; Freed v. Miami Beach Pier Corporation, 93 Fla. 888, 112 So. 841; Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331; Barnes v. Midland Railroad Terminal Co., 193 N. Y. 378, 85 N. E. 1093, 127 A. S. R. 962; Trustees, etc., of Town of Brookhaven v. Smith, 188 N. Y. 74, 80 N. E. 665; Barnes v. Midland Railroad Terminal, 218 N. Y. 91, 112 N. E. 926; 45 C. J. 490; 27 R. C. L. p. 1078, 1366. The riparian Acts of 1856 and 1921 relate to owners of riparian lands "lying upon any navigable stream or bay of the sea or harbor." See Geiger v. Filor, 8 Fla. 325; Williams v. Guthrie, 102 Fla. 1047, 137 So. 682. The Legislature may authorize the shore or beach to be used as a public highway. See Kean v. Stetson, 5 Pick. (Mass.) 492; Chase v. Cochran, 102 Me. 431, 67 Atl. 320; Marblehead v. Essex County, 5 Gray (Mass.) 451; Hopi Township Highway Commissioners v. Ludwick, 151 Mich. 498, 115 N. W. 419, 15 L. R. A. (N. S.) 1170, 14 Ann. Cas. 287; Johnson v. May, 189 App. Div. 196, 178 N. Y. Supp. 742; 45 C. J. 560, Sec. 251; 13 R. C. L. 43, Sec. 33, or foreshore of the Atlantic Ocean. The *locus in quo* in this case is the beach.

Chapter 10486, Special Acts of 1925 provides:

"That the beach of the Atlantic Ocean between high and low water mark, within the confines of Duval County, Florida, be and the same is hereby made and declared a public highway, *but subject to the paramount right of the public to use the same for bathing and recreation.* That as such highway the said beach shall be under the supervision and control of the Board of County Commissioners of Duval County, Florida, and within the limitations herein, shall be subject to the laws of the State with reference to highways. * * *" (Italics supplied.)

Defendant is not asserting unusual rights in the *locus in*

*quo,* as in Brickell v. Trammell, 77 Fla. 544, 82 So. 221; Apalachicola Land & Dev. Co. v. McRae, 86 Fla. 393, 98 So. 505, and other like cases.

While the foreshore or beach on the ocean is held by the sovereign in trust for the public primarily for purposes of navigation, commerce, fishing and bathing, such beach or foreshore is also held in trust for other purposes authorized by law when the first mentioned primary purposes are not excluded or unduly abridged or burdened. Therefore the above statute authorizing the use of the beach for highway purposes "subject to the paramount right of the public to use the beach for bathing and recreation," and subject to governmental regulation, is a valid exercise of the sovereign power of the State in the premises. It was not error to refuse to charge the jury that the beach was not a highway at the *locus in quo.* If the pier extending over the beach is used for bathing and recreation purposes, the use of the beach below, under the statute, as a highway subject to the right of the public to use the surface of the beach to have access to the water for bathing and recreation, and other lawful purposes, is not unlawful but is expressly authorized by statute. If the existence of the pier is authorized and if the obstructions caused by the pilings of the pier to the statutory highway uses of the beach, are negligently maintained so that a member of the public lawfully using the beach as a highway under the statute is injured because of the negligent maintenance of the pier or its pilings, damages may be recovered in due course of law.

Pilings supporting the pier were in the beach area with spaces for the passage of vehicles. It is alleged in the amended declaration that the beach at said point *was used* as a public highway. The statute so authorized. It is alleged that the defendant "carelessly and negligently failed

and neglected to have and maintain any light or other warning of the presence of said piling in said highway, although it was in the night time and dark and foggy and there was no other light or warning present on said pier or wharf at said time, by reason whereof the automobile in which said plaintiff was riding as aforesaid came into collision with one of said piling, and the plaintiff was thereby * * * permanently injured." These and other allegations stated a cause of action and the evidence was amply sufficient to take the case to the jury on the issues made by the pleadings; and the verdict found has adequate support in the evidence under the charges given by the court. The issues on contributory negligence and other defenses were determined by the jury and·their verdict was affirmed by the trial court.

Grounds 14-17 inclusive of the motion for new trial and grounds 8-11 inclusive of the motion in arrest of judgment and repleader set out that Juror Fred H. Hunt had been convicted of an infamous crime, and has not been pardoned or restored to citizenship; and that he was prejudiced against the defendant W. H. Adams so that he could not render a fair and impartial verdict in the case; which disqualified him from sitting as a juror in the trial of this case. A motion in arrest of judgment goes to the record proper. As to repleader, see 4 C. J. 580, 31 Cyc. 511.

It appears from the record that the "infamous crime" referred to in these motions was the conviction of Fred H. Hunt for accepting, as Justice of the Peace, $11.00 in fees to which he was not entitled under the law. He was convicted and fined $25.00, and in default of the payment of said fine he was to be imprisoned in the county jail for a period of one month. There is no record of his ever having been pardoned or restored to citizenship.

The Constitution provides in Article VI, Section 5:

"The Legislature shall have power to, and shall enact the necessary laws to exclude from every office of honor, power, trust or profit, civil or military, within the State, and from the right of suffrage, all persons convicted of bribery, perjury, larceny, or of an *infamous crime.*"    (Italics supplied.)

Section 4443 C. G. L., 1927, provides in part:

"No person who shall have been convicted of bribery, forgery, perjury or larceny, or *any felony,* unless restored to civil rights, shall be qualified to serve as a juror." (Italics supplied.)

The question is whether a conviction and sentence under Section 7489, C. G. L., is an *infamous crime* or a *felony* within the meaning of those words as used in the above quoted provisions of the Constitution and statute.

Section 7489 C. G. L., under which Fred H. Hunt was convicted and sentenced provides for "punishment by imprisonment not exceeding one year, or by fine not exceeding $500.00."   Does the punishment provided for by this statute classify the crime as a felony or misdemeanor?   The term "felony" whenever it occurs in the Constitution or the statute, means a criminal offense punishable with death or imprisonment in the State penitentiary.   Walden v. State, 50 Fla. 151, 39 So. 151.   Hepburn v. Chapman, 109 Fla. 133, 149 So. 196.   Would the fact that the statute, Section 7489 C. G. L., under which Juror Hunt was convicted and sentenced, failed to designate the place of imprisonment as either the State penitentiary or the county jail classify the crime as a misdemeanor or may it also be considered a felony?

In the case of Chapman v. Lake, 112 Fla. 746, 151 So. 399, it was held that if the statute failed to designate the place of punishment the offense was not thereby made a misdemeanor, if the statute expressly designated the offense

as a felony. But under those same circumstances where the statute does not designate the offense as a felony, but provides for punishment by imprisonment not exceeding one year, or by fine not exceeding $500.00, will the offense be classified as a misdemeanor or a felony? Where a crime may be punished as a misdemeanor or as a felony, all doubts will be resolved in the defendant's favor and the crime will be considered a misdemeanor only. 8 R. C. L. 56, Sec. 6; Note 8 Ann. Cas. 822. Where the offense is not considered as a felony but as a misdemeanor only, it will not be considered as an infamous crime, requiring infamous punishment. Therefore Juror Fred H. Hunt was not disqualified to sit as a juror in this case because of his former conviction under Section 7489 C. G. L. See Sec. 5004 R. G. L., 7103 C. G. L.

W. T. Burney, Jr., and John T. Bradley made affidavit that Juror Fred H. Hunt stated in the presence of W. D. Burney, Jr., and John T. Bradley, to the latter, that "he still hoped the time would come when he could get even with Mr. Adams, as he felt that Mr. Adams was really responsible for his having been arrested and placed in jail some two years before, and he hoped the time would come when he could get even with him, or words to that effect."

W. H. Adams, the defendant, made affidavit that at the time of the trial he did not know that Juror Fred H. Hunt, was prejudiced against him or that he had been convicted of an infamous crime; but that since the trial ended affiant has been informed that such things are true; that this is not personal knowledge of affiant but is knowledge acquired by him from the statements made by John T. Bradley and W. D. Burney, Jr., and from examination made by affiant's attorney of the records of the Criminal Court of Record of

Duval County, in the case of State v. Fred H. Hunt, and so reported to affiant.

Charles A. Powers and Charles A. Powers, Jr., attorneys for the defendant, made affidavit that they did not know that Juror Fred H. Hunt was prejudiced against the defendant or that he had been convicted of an infamous crime until two or three days after the trial of this case when so informed by John T. Bradley and W. D. Burney, Jr., that after receiving this information the records of the Criminal Court of Record of Duval County were examined in this respect.

Juror Fred H. Hunt made affidavit that he never made to John T. Bradley, to W. D. Burney or to anyone the statements attributed to him in the affidavits of Bradley and Burney; that he does not recollect having talked with Burney and Bradley together at his place of business or elsewhere; but that he dismissed Burney as an employee at his place of business because of misappropriation of money.

Evan T. Evans made affidavit that there was one conviction and an institution of three charges against W. D. Burney in the Criminal Court of Record of Duval County, all being for violation of the liquor laws, which charges were passed to the absentee docket; that the W. D. Burney who made affidavit in this case is the same W. D. Burney.

Objections made to the affidavit of Evan T. Evans and a certified copy of the transcript of the proceedings in the Criminal Court of Record in Duval County, in the case of State v. W. D. Burney, were overruled. Counter affidavits by J. T. Bradley, W. H. Adams, W. D. Burney, Sr., and W. D. Burney, Jr., were allowed to be introduced; but they in nowise touched upon the disability of Juror Fred H. Hunt to sit as a juror in this case and render a fair and

impartial verdict, but related to other matters not important here.

The only affidavits that state positively that Fred H. Hunt was disqualified to sit as a juror in this case, on account of his prejudice against the defendant, were those of John T. Bradley and W. D. Burney, Jr. As against those, the affidavit of Juror Fred H. Hunt denied any such prejudice. The trial judge after considering these affidavits found that no such disqualification existed, and denied the motions for new trial and arrest of judgment. The determination of such questions as these must of necessity be left largely to the discretion of the trial judge. See People v. Taing, 53 Cal. 602; People v. Vasquez, 49 Cal. 560.

"To allow parties after the close of an important case to come in and file *ex parte* affidavits, and thus set at naught the findings of a jury, would be equivalent to doing away with jury trials. In this case the trial judge fully examined into all the facts connected with the alleged incompetency of Tindall and after doing so, in the exercise of a sound discretion refused to set aside the verdict." Yates v. State, 26 Fla. 484, 7 So. 880.

No error of law or procedure having been made to appear, the judgment of the trial court is accordingly affirmed.

Affirmed.

ELLIS, C. J., and TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., dissents.