90 So.2d 715 (1956)
Edwin C. McDOWELL and Betty Stallcup McDowell, his wife, Appellants,
v.
TRUSTEES OF The INTERNAL IMPROVEMENT FUND of the STATE OF FLORIDA, Appellees.
Supreme Court of Florida. Division A.
November 14, 1956.
*716 Paul Ritter, Winter Haven, for appellants.
Richard W. Ervin, Atty. Gen., John D. Moriarty, Asst. Atty. Gen., E. Snow Martin of Bryant & Martin, Lakeland, and Frank C. Stanley, Jr., Auburndale, for appellees.
HOBSON, Justice.
The Trustees of the Internal Improvement Fund of the State of Florida, appellees, here, sued the appellants to enjoin them from dredging Lake Ariana or otherwise taking soil from such lake. In the bill of complaint it was alleged that the land comprising the bottom of Lake Ariana is a part of the sovereignty lands owned by the State for the use and benefit of the public. After hearing the testimony of several witnesses and personally viewing the premises, the chancellor entered a final decree permanently enjoining the dredging operations, but denying a mandatory injunction which had been sought to cause the appellants to remove soil which they had already dredged up from the bottom of the lake and used to build a peninsula adjacent to the shoreline. It is undisputed that appellants own property down to this shoreline. The Trustees have filed a cross-appeal directed to so much of the final decree as denied the mandatory injunction.
It is stipulated in the record that Lake Ariana covers 970 acres, is between a mile and a half and a mile and three quarters across, and varies in depth from zero to fifteen feet. The chancellor found this lake to be navigable, and it is contended by appellants that the record does not sustain this finding. Considering the fact that the chancellor personally viewed the premises, the testimony of witnesses from which it may be inferred that the lake is at least useful for fishing, and the photographic exhibits, we cannot say that the chancellor's ruling upon this vital point was error. In Broward v. Mabry, 58 Fla. 398, 50 So. 826, at page 830, we said, in an opinion by Mr. Justice Whitfield:
"Capacity for navigation, not usage for that purpose, determines the navigable character of waters with reference to the ownership and uses of the land covered by the water. Grants and conveyances of land bordering on navigable waters carry title in general to ordinary high-water mark when a valid contrary intent does not appear."
The opinion of the chancellor demonstrates that he was entirely familiar with the tests of navigability, and his determination that the lake possesses the capacity for navigation *717 cannot be set aside on the showing made here.
Further in connection with the issue of navigability, appellants rely on Laws of Florida 1953, § 192.61(2). By the language of this section, taken in isolation, it would appear that waters lying over "areas which have heretofore been conveyed to private individuals by the United States of America or by the State of Florida without reservation of public rights in and to said waters" are non-navigable as a matter of law. This subsection was originally part of Chapter 28262, Laws of Florida 1953, which pertained to tax matters. See Webb v. Giddens, Fla., 82 So.2d 743, in which we mentioned another section of this act. In the 1953 Florida Statutes, the subsection was appropriately included in the chapter on taxation, and it was apparently intended by the legislature to provide a guide for the benefit of tax assessors. In Florida Statutes 1955, F.S.A., the subsection has been transferred to form a part of § 271.09, in a chapter entitled "Grants to Riparian Owners". Before the 1955 revision is re-enacted by the legislature, however, the new position of this section cannot be considered, and even if it could it would be inapplicable hereto in view of § 271.06 which renders the entire chapter inapplicable to lakes except tidewater lakes.
Further, appellants have not shown that land beyond the shoreline of the lake was conveyed to their predecessors in title. The chancellor, on conflicting evidence, was authorized to find that there had been no substantial change in the level or shoreline of the lake for many years. With due regard to the official plat upon which the conveyance made to appellants' predecessors in title was based, no intention is demonstrated to convey to them title to land beyond the ordinary high-water mark of Lake Ariana. It appears that their main reliance is upon a statement in the original government field notes as to the location of the meander line which the chancellor, on this record, was authorized to find erroneous. If this meander line were followed, it would extend the eastern boundary of the lot out into the waters of Lake Ariana between 200 and 300 feet. The chancellor could have followed the official plat, which shows the lot to have been bounded on the east by the waters of Lake Ariana, and could have concluded, as he apparently did, that no substantial change in the shoreline had been proved.
Since Lake Ariana is a navigable, meandered lake, the chancellor correctly ruled that title to its bottom was in the State. Broward v. Mabry, supra; Martin v. Busch, 93 Fla. 535, 112 So. 274; White v. Hughes, 139 Fla. 54, 190 So. 446. In Hicks v. State ex rel. Landis, 116 Fla. 603, 156 So. 603, 604, we said, in an opinion by Mr. Chief Justice Davis:
"The State holds the title to lands under navigable waters in trust for the people of the state that they may enjoy the navigation of the waters, carry on commerce over them, and have the liberty of fishing therein free from the obstruction and interference of private parties. The trust devolving upon the state for the public, and which can only be discharged by the management and control of the property in which the state has an interest, cannot be relinquished by a transfer of the property, or by the transfer of any special interest therein, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the waters and lands remaining. Pembroke v. Peninsular Terminal Co., 108 Fla. 46, 146 So. 249."
See also Bucki v. Cone, 25 Fla. 1, 6 So. 160; and State ex rel. Ellis v. Gerbing, 56 Fla. 603, 47 So. 353, 22 L.R.A.,N.S., 337. See also Baker v. State ex rel. Jones, Fla., 87 So.2d 497.
*718 The second basic contention of appellants is that if Lake Ariana is a meandered lake and, in fact, navigable, they were within their riparian rights to extend the lands out from the shoreline and over the bottom of the lake. This contention could be colorably maintained, on the state of facts here presented, only by reference to the "Butler Bill" which, however, excluded lakes other than tidewater lakes from its operation. See Duval Engineering & Contracting Co. v. Sales, Fla., 77 So.2d 431. Appellants cannot acquire title to sovereignty lands in this fashion.
This brings us to a consideration of the cross-appeal of the Trustees. As stated above, a mandatory injunction was sought to compel appellants to remove the soil which they had dredged up to form the peninsula. In consideration of the facts of the case, and after viewing the premises, the chancellor was of the opinion that appellants' acts had resulted in little or no injury to the public and that it would be inequitable to grant the mandatory injunction prayed for. We think that this ruling was within the chancellor's discretion, for mandatory injunctions are viewed with great circumspection by the courts, and an order of the trial court in connection therewith ordinarily will not be disturbed. Hotel & Restaurant Employees, etc. v. Boca Raton Club, Fla., 73 So.2d 867; Johnson v. Killian, 157 Fla. 754, 27 So.2d 345; Miami Bridge Co. v. Miami Beach R. Co., 152 Fla. 458, 12 So.2d 438; American Fire and Cas. Co. v. Rader, 160 Fla. 700, 36 So.2d 270. The chancellor, however, apparently omitted to determine the extent of the lands created by the appellants eastward from the shoreline, which are sovereignty lands of the State of Florida. The final decree must therefore be reversed in order that this limited determination may be made. In all other respects the judgment appealed from is affirmed.
It is so ordered.
DREW, C.J., and TERRELL and THORNAL, JJ., concur.