141 So.2d 21 (1962)
Harry GUTTERMAN, Relator,
v.
STATE of Florida, by Richard W. Ervin, as Attorney General of said State, Respondent.
No. D-4.
District Court of Appeal of Florida, First District.
May 3, 1962.
Rehearing Denied May 31, 1962.
Edward L. Bush, Patalka, for relator.
Richard W. Ervin, Atty. Gen., and Walter A. Shelley, Daytona Beach, for respondent.
CARROLL, DONALD K., Chief Judge.
The respondent in a quo warranto proceeding has appealed from a final judgment of ouster entered by the Circuit Court for St. Johns County, ousting him from the office of City Commissioner of the City of St. Augustine, Florida.
Stated briefly, the following facts appear from the record before us on this appeal:
In a municipal election held in St. Augustine on May 23, 1961, the respondent was elected to a two-year term as a member of the city commission.
The charter of the City of St. Augustine (Chapter 11148, Laws of Florida, Special Acts of 1925, as amended by Chapter 31217, Laws of Florida, Special Acts of 1955) provides that the city commission of the city shall be composed of five members "* * who shall be owners of real estate within the City of St. Augustine, and who shall be qualified electors of said City * * *."
Section 97.041, Florida Statutes, F.S.A., provides that the following persons, among others, are not entitled to vote:
"4. Persons convicted of any felony by any court of record and whose civil rights have not been restored.

*22 "5. Persons convicted of bribery, perjury, larceny or any infamous crime in this or other states, or interested in any wager depending on the result of any election."
In addition, Section 112.01, Florida Statutes, F.S.A., provides:
"112.01 Conviction of certain offenses to exclude from office.  All persons convicted of bribery, larceny, perjury, or any other infamous crime, or who shall make or become directly or indirectly interested in any bet or wager, the result of which shall depend upon any election, or who shall hereafter fight a duel, or send or accept a challenge to fight, or who shall be second to either party, or be the bearer of such challenge or acceptance, shall be excluded from every office of honor, power, trust or profit, civil or military, within this state, and from the right of suffrage; but the legal disability shall not accrue until after trial and conviction by due form of law; provided, however, that nothing in this section shall be so construed as to remove or affect any punishment or legal disability resulting from convictions heretofore."
Sections 97.041 and 112.01, Florida Statutes, F.S.A., were presumably enacted by the State Legislature pursuant to the authority granted it in Article VI, Section 5, of the Florida Constitution, F.S.A., reading as follows:
SECTION 5. "Power to exclude criminals from holding office and right to vote.  The Legislature shall have power to, and shall, enact the necessary laws to exclude from every office of honor, power, trust or profit, civil or military, within the State, and from the right of suffrage, all persons convicted of bribery, perjury, larceny or of infamous crime, or who shall make, or become directly or indirectly interested in, any bet or wager, the result of which shall depend upon any election; or that shall hereafter fight a duel or send or accept a challenge to fight, or that shall be second to either party, or that shall be the bearer of such challenge or acceptance; but the legal disability shall not accrue until after trial and conviction by due form of law."
On April 5, 1937, in accordance with a jury verdict, the respondent was convicted of the crime of "assault-second degree" by the County Court for the County of Kings, in the Borough of Brooklyn, City of New York, New York, and sentenced to imprisonment in the New York County Penitentiary for a term of six months.
Section 242 of the New York Penal Law, as last amended by Chapter 88 of the Laws of 1909, McKinney's Consol.Laws, c. 40, defines the crime of assault in second degree as follows:
"§ 242. Assault in second degree. A person who, under circumstances not amounting to the crime specified in section two hundred and forty,
"1. With intent to injure, unlawfully administers to, or causes to be administered to, or taken by another, poison, or any other destructive or noxious thing, or any drug or medicine the use of which is dangerous to life or health; or,
"2. With intent thereby to enable or assist himself or any other person to commit any crime, administers to or causes to be administered to, or taken by another, chloroform, ether, laudanum, or or any other intoxicating narcotic or anaesthetic agent; or,
"3. Wilfully and wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon; or,
"4. Wilfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm; or,

*23 "5. Assaults another with intent to commit a felony, or to prevent or resist the execution of any lawful process or mandate of any court or officer, or the lawful apprehension or detention of himself, or of any other person,
"Is guilty of assault in the second degree."
No copy of the indictment or information on which the respondent was tried in the New York court is found in the record before us nor is there in this record a copy of any other official instrument setting forth the exact charge on which he was tried and convicted. The nearest thing we find in the record to such an instrument is a paper denominated as the police record of the respondent, containing these notations "Arrested for felonious assault on May 13th 1936 * * * Using object on face of another." The only other thing in the record which we have found throwing any light on the nature of the offense is the respondent's testimony in a deposition that, when he and a friend were in a garage in Brooklyn "somebody hit me, and I grabbed his iron, whatever he had, and I hit him back."
The reaching of a judicial determination as to whether the respondent's conviction by the New York court in 1937 of the crime of second degree assault, which exact offense is unknown to Florida statutes, disqualifies him from holding the office of city commissioner of St. Augustine, requires a consideration of several problems in conflicts of laws and in statutory construction and application. These questions make this a case of first impression in this state.
One proposition is clear, however: we are essentially concerned with the application of Florida laws, not the laws of New York. While both parties to this appeal cite and rely upon many laws of the latter state, we think those laws are pertinent chiefly in establishing the nature of the crime of which the respondent was convicted in 1937.
We first reduce the problem before us by eliminating from our consideration the Florida statutory provisions which do not expressly refer to a disqualification resulting from convictions by the courts of other states.
The United States Supreme Court in Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 630, 36 L.Ed. 429 (1892), laid down the following rule:
"At common law, and on general principles of jurisprudence, when not controlled by express statute giving effect within the State which enacts it to a conviction and sentence in another State, such conviction and sentence can have no effect, by way of penalty, or of personal disability or disqualification, beyond the limits of the State in which the judgment is rendered. [State of] Wisconsin v. Pelican Ins. Co., 127 U.S. 265, [8 S.Ct. 1370, 32 L.Ed. 239]; Commonwealth v. Green, 17 Mass. 515; Sims v. Sims, 75 N.Y. 466; National Trust Co. [of New York] v. Gleason, 77 N.Y. 400; Story on Conflict of Laws, § 92; 1 Greenl.Ev. § 376."
Applying this rule here, the only disqualification statute of Florida left for our consideration and instruction is paragraph five of Section 97.041, Florida Statutes, F.S.A., which declares not entitled to vote persons "convicted of bribery, perjury, larceny or any infamous crime in this or other states, or interested in any wager depending on the result of any election."
Obviously, the only category of crimes named in this statutory provision in which could be placed the crime of which the respondent was convicted in 1937 is: "* * * any infamous crime in this or other states. * * *" His crime not only fails to fit the description of the other crimes mentioned in the provision but we think that his crime is of a very different nature from that of those other crimes named therein. His crime involved an act of physical violence, while, generally speaking, persons who commit the crimes specifically enumerated *24 in the said provision (bribery, perjury, larceny, etc.) ordinarily evince a state of mind inimical to their obligations as citizens of their community and society. This consideration, however, is not decisive here, for the Legislature enacting this law was not bound to list only comparable offenses as disqualifications.
The precise question before us, then, is whether the crime of assault-second degree of which the respondent was convicted by the New York court in 1937 was an "infamous crime" within the meaning of paragraph five of Section 97.041, Florida Statutes, F.S.A.
As mentioned above, the statutes of this state do not designate any crime as assault in the second degree as does the New York statute quoted earlier in this opinion, nor do our statutes declare that the acts defined in the New York statute as constituting assault in the second degree to be a crime under another name. The nearest crime under the statutes of Florida to assault in the second degree, as defined by the New York statute, is aggravated assault, which is declared a crime in Section 784.04, Florida Statutes, F.S.A. This statute, as it read in 1936 and 1937 (and from 1881 to 1955), provided as follows:
"784.04 Aggravated assault
"Whoever assaults another with a deadly weapon, not having a premeditated design to effect the death of the person assaulted, shall be deemed guilty of an aggravated assault, and shall be punished by imprisonment not exceeding one year, or by fine not exceeding five hundred dollars."
In the case of Lindsay v. State, 67 Fla. 111, 64 So. 501 (1914), the Supreme Court of Florida held that a large stick may constitute a deadly weapon within the meaning of the just-quoted statute. We earlier adverted to the dearth of information in the record as to the kind of article used by the respondent in the 1936 assault, except for the respondent's statement that, when somebody hit him, he "grabbed his iron, whatever he had, and I hit him back." Assuming, as we must, from the record which indicates nothing to the contrary, that the respondent did not have a premeditated design to effect the death of the person he assaulted, and assuming that the "iron" in question could be construed to be a deadly weapon under Section 784.04, the most serious crime he could have been charged with and convicted of in the courts of Florida for a similar offense committed in this state in 1936, would be aggravated assault, as defined in Section 784.04, Florida Statutes, quoted above. If, however, the first assumption were true but the "iron" were not construable as a deadly weapon under the statute, the respondent's offense would no doubt be held to be assault and battery under Section 784.03, which provided in 1936 as well as today:
"784.03 Punishment of assault and battery
"Whoever commits assault and battery shall be punished by imprisonment not exceeding six months, or by fine not exceeding five hundred dollars."
The punishment provisions of Sections 784.03 and 784.04, Florida Statutes, F.S.A., must be construed "in pari materia" with Section 775.06, Florida Statutes, F.S.A., which provides:
"Whenever punishment by imprisonment is prescribed, and the said imprisonment is not expressly directed to be in the state prison, it shall be taken and held to be imprisonment in the county jail, and whenever the punishment is prescribed to be fine or imprisonment (whether in the state prison or county jail), in the alternative, the court may, in its discretion, proceed to punish by both fine and such imprisonment."
Construing together Sections 784.03, 784.04, and 775.06, as they existed in 1936, when the respondent committed the offense of assault in the second degree in New *25 York of which he was convicted in 1937 by a court of that state, the respondent, under our reasoning set forth above, if he had committed the same crime on the same date in the State of Florida instead of in the State of New York, would have been at most subject to the punishment under our laws of imprisonment in the county jail not exceeding one year, or by a fine not exceeding $500, or both such imprisonment and fine. He could not have been lawfully sentenced to serve the time in the state prison. See Kiser v. Mayo, 138 Fla. 775, 190 So. 246 (1939).
Consequently, such a crime was not a felony under the Constitution and laws of Florida. Section 25 of Article XVI of the Florida Constitution defines felony to mean "any criminal offense punishable with death or imprisonment in the State Penitentiary." Similarly, Section 775.08, Florida Statutes, F.S.A., provides: "Any crime punishable by death, or imprisonment in the state prison, is a felony, and no other crime shall be so considered. Every other offense is a misdemeanor."
The appellee urges, however, that under New York statutes, which define "felony" as a crime "punishable by death or imprisonment in a state prison", the crime of assault in the second degree is a felony because it is "punishable by imprisonment in a penitentiary or state prison," even though the respondent was actually sentenced by the New York court to imprisonment in the "New York County Penitentiary" for a term of six months. This is entirely true, but, as we pointed out earlier in this opinion, our responsibility on this appeal is to construe and apply the laws of Florida and not those of New York in determining whether the respondent is legally qualified to hold the office of city commissioner of St. Augustine, Florida.
The heart of the question before us, then, is whether the crime of which the respondent was convicted in New York in 1937 is an "infamous crime" within the meaning of the term in paragraph five of Section 97.041.
In the early case of King v. State, 17 Fla. 183 (1879), the Supreme Court of Florida said:
"What then constitutes the `infamous crimes' which makes it necessary to have the action of the grand jury upon before the party accused can be tried? In Hickman's case, (R. & M., 34,) cited in Tomlinson's Law Dictionary, it was held by the judges that where the statute inflicted punishment for falsely accusing another of an infamous crime, such crimes only were to be deemed infamous as subjected a man to infamous punishment, or incapacitated him from being a witness.
"Blackstone says `infamous persons are such as may be challenged as jurors propter delictum, and therefore never shall be admitted to give evidence to inform that jury with whom they were too scandalous to associate.'
"Mr. Bishop, in his work on Criminal Law, in commenting upon this subject, says: `Probably the test is to inquire whether the crime shows such depravity in the perpetrator, or such a disposition to pervert public justice in the courts as creates a violent presumption against his truthfulness under oath,' and then remarks that the difficulty is in the application of the test. In this case it is not difficult, as the Legislature has fully determined it."
In the more recent case of Adams v. Elliott, 128 Fla. 79, 174 So. 731 (1937), the Supreme Court of Florida considered the question whether a juror who sat at the trial was disqualified because he had formerly been convicted of the crime of accepting fees to which he was not entitled while he was a justice of the peace. He had been convicted and fined $25, and in default of the payment of the said fine he was to be imprisoned in the county jail for a period of one month. The opinion does not mention the court that convicted him, but, undoubtedly it was a Florida court because the Supreme Court points out that he was *26 convicted under Section 7489, Compiled General Laws of Florida, 1927, which, said the Supreme Court, "provides for punishment `by imprisonment not exceeding one year, or by fine not exceeding five hundred dollars.'" The Supreme Court quoted Article VI, Section 5, of the Florida Constitution, which we quoted earlier in this opinion, and then quoted Section 4443, C.G.L. 1927, which at that time read as follows:
"no person who shall have been convicted of bribery, forgery, perjury or larceny, or any felony, unless restored to civil rights, shall be qualified to serve as a juror."
In the Adams case the Supreme Court said:
"In the case of Chapman v. Lake, 112 Fla. 746, 151 So. 399, it was held that, if the statute failed to designate the place of punishment, the offense was not thereby made a misdemeanor, if the statute expressly designated the offense as a felony. But under those same circumstances, where the statute does not designate the offense as a felony, but provides for punishment by imprisonment not exceeding one year, or by fine not exceeding $500, will the offense be classified as a misdemeanor or a felony? Where a crime may be punished as a misdemeanor or as a felony, all doubts will be resolved in the defendant's favor and the crime will be considered a misdemeanor only. 8 R.C.L. 56, § 6; note 8 Ann.Cas. 822. Where the offense is not considered as a felony but as a misdemeanor only, it will not be considered as an infamous crime, requiring infamous punishment. Therefore juror Fred H. Hunt was not disqualified to sit as a juror in this case because of his former conviction under section 7489, C.G.L. See section 5004, R.G.L., section 7103, C.G.L."
The Circuit Court in the judgment of ouster appealed from herein relied upon the decision of the Supreme Court in the Adams case as a ruling that an "infamous crime," as referred to in Section 97.041(5), is defined as one punishable in a State prison or penitentiary. The Circuit Court then held:
"It is further the opinion of the Court that under Section 243 of the Penal Code of New York, assault in second degree is a felony punishable by imprisonment in a penitentiary and under Section 152 of the Election Laws of the State of New York [McKinney's Consol.Laws, c. 17], no person who has been convicted of a felony shall have the right to register for or vote at any election unless he shall have been pardoned or restored to the rights of citizenship, and respondent by reason of his conviction aforesaid, thereby lost his right to register and vote unless he shall have been pardoned or restored to the rights of citizenship."
This being a case of first impression and there being no crime recognized under Florida law identical to the crime recognized in New York as assault in the second degree, it might seem logical thus to resort to the laws of New York. At this point, however, we must again emphasize the basic fact that we must construe and apply the laws of Florida and not those of another state in determining the legal entitlement of the respondent to hold the public office in question. This necessity impels our endeavor to compare and equate as nearly as possible the crime of which the respondent was convicted in New York with the criminal laws of Florida in effect at the time of his committing the said offense in order better to effectuate the true intention of the Florida Legislature in enacting the disqualification statutes in question.
It is not for us, of course, as members of the state judiciary, to say whether we think the respondent is qualified to hold that office in view of his conviction in New York. Our only lawful function is to determine whether on the record before us on this appeal the respondent is disqualified to hold that office under the state constitution *27 adopted by the people of Florida or under the statutes enacted by the legislators representing the people in the State Legislature.
We hold that, under the Constitution and laws of the State of Florida, the crime of which the respondent was convicted by the New York court in 1937 was not a felony or an infamous crime within the meaning of the disqualification statutes of this state and thus that conviction did not disqualify him from holding the office of city commissioner of St. Augustine. As we held above, the lawful maximum punishment in Florida at the time he committed the crime in New York was not such that it made the crime a felony. Furthermore, it is our opinion that neither such maximum punishment nor the crime itself was "infamous" within the meaning of Section 97.041, paragraph 5.
In view of this holding we need not here discuss the other points raised by the appellant on this appeal.
The judgment of ouster appealed from is, therefore, reversed.
Reversed.
STURGIS and RAWLS, JJ., concur.