Dear Mr. Battista:
On behalf of the Citrus County Board of County Commissioners, you have asked for my opinion on substantially the following questions:
 1. Is Citrus County prohibited, pursuant to Chapter 327, Florida Statutes, and Chapter 68D-23, Florida Administrative Code, from adopting an ordinance creating a boating restricted area near residential properties for the purpose of vessel noise abatement under the county's police power to protect the health, safety and welfare of those citizens subjected to unnecessary vessel noise?
 2. If the response to Question 1 is no, can the county enforce such a regulation if waterway regulatory markers for this purpose are prohibited?
According to your letter, Citrus County is a non-charter county that has concerns regarding vessel noise on waterways, particularly airboat noise. The county has recently declined to adopt the provisions of section 327.65, Florida Statutes, restricting vessel noise to 90 decibels at 50 feet and is awaiting the pending airboat sound study to be undertaken by the Florida Fish and Wildlife Conservation Commission. The county is considering the creation of boating restricted areas, such as idle speed zones, near residential properties as a means of controlling unnecessary vessel noise. The areas of concern to Citrus County citizens do not meet the criteria for approval of a regulatory marker for a boating restricted area as set forth in section 68D-23.105, Florida Administrative Code. In addition, you have advised this office that no reports, citations, studies or other creditable data are currently available to support the approval of a regulatory marker for such a restriction in these areas.
Subject to the powers of Congress over navigable waters, and in the absence of federal legislation on the subject, the state has full regulatory authority over navigable waters within its limits, and may legislate even in the area of navigation itself in appropriate circumstances.[1] Recognizing its authority in this area, the state has enacted Chapter 327, Florida Statutes, which regulates registration and safety of vessels using Florida waters, and provisions in Chapter 861, Florida Statutes, that make it a crime to obstruct navigability.[2]
The state may entrust the protection of navigable waters within a county to the county itself, provided there is no interference with the control of the federal government within its jurisdiction.[3] Thus, section 327.60, Florida Statutes, authorizes local governments to adopt ordinances or local laws relating to the operation and equipment of vessels and provides limitations on that authority. Section 327.60(1), Florida Statutes, provides in part:
"Nothing in these sections shall be construed to prevent the adoption of any ordinance or local law relating to the operation and equipment of vessels . . . except that such ordinances or local laws shall be operative only when they are not in conflict with this chapter or anyamendments thereto or regulations thereunder." (e.s.)
In addition, section 327.22, Florida Statutes, authorizes a county that expends money for the patrol, regulation, and maintenance of any lakes, rivers, or waters and for other boating-related activities in the county to regulate vessels resident in the county.
Chapter 327, Florida Statutes, imposes specific requirements for noise abatement of vessel engines.[4] Counties are authorized to adopt ordinances imposing additional noise pollution and exhaust regulations. Section 327.65(2)(a), Florida Statutes, states:
 "Any county wishing to impose additional[5]
noise pollution and exhaust regulations on vessels may, pursuant to s. 327.60(1), adopt by county ordinance the following regulations:
 1. No person shall operate or give permission for the operation of any vessel on the waters of any county or on a specified portion of the waters of any county, including the Florida Intracoastal Waterway, which has adopted the provisions of this section in such a manner as to exceed the following sound levels at a distance of 50 feet from the vessel: for all vessels, a maximum sound level of 90 dB A.[6]
 2. Any person who refuses to submit to a sound level test when requested to do so by a law enforcement officer is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."
Thus, the statutes provide authority for counties to adopt regulations on certain navigation-related issues including noise abatement, but provide specific parameters for such local legislation. Violations of local ordinances imposing additional noise pollution regulations on vessels are classified as noncriminal infractions punishable pursuant to section327.73, Florida Statutes.[7] Your letter indicates that Citrus County has not adopted these more stringent noise pollution regulations.
The administrative rules promulgated by the Fish and Wildlife Conservation Commission to implement provisions of Chapter 327, Florida Statutes, also recognize the authority of local governments to adopt local regulations requiring the placement of safety or navigation waterway markers in Florida waters. The provisions of Chapter 68D-23, Florida Administrative Code, set forth the procedures by which the Division of Law Enforcement of the Fish and Wildlife Conservation Commission permits and regulates the placement of markers on Florida waters and shores.[8] It is the specific intent of this chapter of the Florida Administrative Code:
 "(a) To provide for uniformity in design, construction and coloring of markers so that all vessel operators may readily recognize, identify and distinguish between authorized markers and unlawfully placed markers;
 (b) To provide a means by which the Division and its officers and all other law enforcement officers charged with the enforcement of this chapter may determine with reasonable certainty which boating restricted areas are lawfully established and marked;
* * *
 (d) To insure that regulatory markers noticing boating restricted areas created pursuant to Sections 327.22, 327.60 and 370.12, F.S., are authorized only for the purposes of protecting human life and limb, vessel traffic safety and maritime property, and manatees."[9]
The rules also express the intent that "no boating restricted area [shall] be established, continued in effect, or enforced for the purposeof noise abatement or for the protection of shoreline, shore-based structures, or upland property from vessel wake or shoreline wash."[10]
A "[b]oating restricted area" is defined to mean "an area of the waters of the state within which the operation of vessels is subject to specified restrictions or from which vessels are excluded."[11]
Furthermore, section 327.40, Florida Statutes, provides that no governmental entity shall place safety or navigation markers in or on Florida waters without a permit from the Division of Law Enforcement of the Fish and Wildlife Conservation Commission.[12]
Chapter 327, Florida Statutes, and the administrative rules promulgated thereunder limit the authority of local governments to adopt noise abatement regulations and enforce those regulations on state waters. The county's authority to regulate is subject to the state's paramount power to regulate and control the use of its sovereign lands. A corollary to the requirement that regulations and restrictions of certain activities must be in furtherance of public health, safety, and welfare is that such regulation must not be in violation of constitutional protections afforded to the public for the use of, and access to, state sovereignty lands.[13]
Therefore, it is my opinion, based on these considerations, that Citrus County is prohibited from adopting an ordinance creating a boating restricted area near residential properties for the purpose of vessel noise abatement outside of the specific grant of authority provided in Chapter 327, Florida Statutes. The county may wish to reconsider adopting an ordinance pursuant to the authority of section 327.65(2)(a), Florida Statutes, that would allow the county to regulate noise pollution on vessels as provided in that section.
Sincerely,
 Charlie Crist Attorney General
CC/tgh
[1] See generally, 56 Fla.Jur.2d Water s. 127.
[2] See, e.g., s. 861.02, Fla. Stat., "Obstructing watercourse;" s.861.05, Fla. Stat., "Obstruction to navigation by bridges;" and s. 861.06, Fla. Stat., "Obstructing harbors."
[3] See Board of County Commissioners of Escambia County v. Board ofPilot Commissioners of the Port of Pensacola, 42 So. 697 (Fla. 1906) (holding that the depth of the water in a river, harbor, bay, or port in a county is one of the chief elements of its value, and its protection from injury by being filled in is within the purposes for which county governments are established, even though the harbor or bay is also and largely used for passage to and from, and commerce with, points beyond the county); Board of County Commissioners of Pinellas County v. Ford,419 So. 2d 786 (Fla. 2nd DCA 1982) (a county water and navigation control authority could consider navigational factors in regulating the construction of docks under a special act recognizing the right of an upland owner to construct a dock in front of the upland as provided by state law, but permitting the authority to make reasonable rules and regulations for construction thereof; moreover, the authority's decision to deny a private dock permit application on the ground the structure would pose a hindrance to navigation was supported by substantial competent evidence in the form of statements by qualified persons that the waterway was heavily traveled and adversely affected by shoaling, tides, and currents, notwithstanding that the proposed dock complied with deed lot restrictions, the authority's rules, and city zoning ordinances, and was considered reasonable by the United States Army Corps of Engineers).
[4] See s. 327.65(1), Fla. Stat., requiring the exhaust of vessel engines to be muffled by equipment that muffles the noise of the exhaust in a reasonable manner.
[5] See, n. 4 supra.
[6] "dB A" is defined in section 327.65(2)(b)1., Fla. Stat., to be the "composite abbreviation for the A-weighted sound level and the unit of sound level, the decibel."
[7] See 327.73(1)(k)2., Fla. Stat., providing that violations relating to restricted areas established by local governmental authorities pursuant to s. 327.60, Fla. Stat., are noncriminal violations; and s.327.73(1)(n), Fla. Stat., making violations of s. 327.65, Fla. Stat., relating to muffling devices a noncriminal infraction.
[8] See Rule 68D-23.102, F.A.C.
[9] 68D-23.101(1)(a), (b), and (d), F.A.C.
[10] 68D-23.101(2), F.A.C.
[11] 68D-23.103(1)(i), F.A.C.
[12] Section 327.40(2)(b), Fla. Stat.
[13] This constitutionally derived protection is known as the public trust doctrine. See McDowell v. Trustees of Internal Improvement Fund,90 So. 2d 715 (Fla. 1956); White v. Hughes, 190 So. 446 (Fla. 1939);Adams v. Elliott, 174 So. 731 (Fla. 1937); and Ops. Att'y Gen. Fla. 85-47 (1985), 79-71 (1979), and 73-430 (1973).