Dear Mr. Wagner:
On behalf of the Board of County Commissioners of Alachua County, you have asked for my opinion on substantially the following questions:
1. Does a county-imposed curfew on airboats that is based upon eliminating airboat operational noise create a boating-restricted area subject to Florida Fish and Wildlife Conservation Commission approval pursuant to Chapter 327, Florida Statutes, as amended by Chapter 2009-86, Laws of Florida.
2. Does a county-imposed curfew prohibiting the operation of airboats on specified water bodies in Alachua county during certain hours create a boating restricted area governed by the criteria and procedures in Chapter 327, Florida Statutes, as amended by Chapter 2009-86, Laws of Florida?
3. Does a county-imposed curfew prohibiting the operation of airboats on all water bodies in Alachua County during certain hours create a boating-restricted area governed by the criteria and procedures in Chapter 327, Florida Statutes, as amended by Chapter 2009-86, Laws of Florida?
4. Does section 327.60(2)(e), Florida Statutes, as amended by Chapter 2009-86, Laws of Florida, allow a local government to adopt an ordinance imposing an airboat curfew, for reasons other than public safety, by a two-thirds vote of the governing body?
In sum:
1. — 3. A county-imposed curfew on airboats that is based upon eliminating airboat operational noise does not create a boating-restricted area within the scope of section 327.46, Florida Statutes, which would be subject to Florida Fish and Wildlife Conservation Commission approval pursuant to Chapter 327, Florida Statutes, as amended by Chapter 2009-86, Laws of Florida.
4. Section 327.60(2)(e), Florida Statutes, authorizes counties to adopt ordinances governing the operation of vessels which may discriminate against airboats when such ordinances are adopted by a two-thirds vote of the governing body enacting such an ordinance. In enacting any such ordinance, the county must balance its concern for the public health, safety, and welfare with constitutional considerations and a recognition that any such regulation must not be in violation of constitutional protections afforded to the public for the use of, and access to, state sovereignty lands.
According to information you have supplied to this office, Alachua County is considering adopting a curfew on airboat operation on county waterways. The purpose of this ordinance is to deal with the noise caused by airboats on county water bodies, especially the disruption caused by that noise during nighttime hours. Alachua County currently has a noise ordinance prohibiting the operation of motor boats or watercraft in any water body in the county in a manner so as to exceed the sound level of 90 dba at a distance of 15 meters (50 feet), or the nearest shoreline, whichever instance is less. The ordinance under consideration by the county commission would impose a curfew on the nighttime operation of airboats. In light of amendments to Chapter 327, Florida Statutes, during the 2009 legislative session, you have questions about the county's authority to establish such a curfew and any applicable legislative requirements for the adoption of such an ordinance.
Questions One — Three
Your first three questions, dealing with local legislation on the issue of boating-restricted areas, will be considered together.
In the absence of federal legislation and subject to the powers of Congress over navigable waters, Florida has full regulatory authority over navigable waters within state limits and may even legislate in the area of navigation in appropriate circumstances.[1] In recognition of this authority, the state has enacted Chapter 327, Florida Statutes, which regulates the registration and safety of vessels using Florida waters, and the provisions of Chapter 861, Florida Statutes, making the obstruction of navigability a criminal offense.[2]
The state has delegated the protection of navigable waters within counties to local governments, provided there is no interference with federal governmental control within the county's jurisdiction.[3] In this regard, section 327.60, Florida Statutes, authorizes local governments to adopt ordinances or local laws relating to the operation and equipment of vessels and provides limitations on that authority. Section 327.60, Florida Statutes, as amended by section 14, Chapter 2009-86, Laws of Florida, provides that
"(1) The provisions of this chapter and chapter 328 shall govern the operation, equipment, and all other matters relating thereto whenever any vessel shall be operated upon the waters of this state or when any activity regulated hereby shall take place thereon.
(2) Nothing in this chapter or chapter 328 shall be construed to prevent the adoption of any ordinance or local regulation relating to operation of vessels, except that a county or municipality shall not enact, continue in effect, or enforce any ordinance or local regulation:
(a) Establishing a vessel or associated equipment performance or other safety standard, imposing a requirement for associated equipment, or regulating the carrying or use of marine safety articles;
(b) Relating to the design, manufacture, installation, or use of any marine sanitation device on any vessel;
(c) Regulating any vessel upon the Florida Intracoastal Waterway;
(d) Discriminating against personal watercraft;
(e) Discriminating against airboats, for ordinances adopted after July 1, 2006, unless adopted by a two-thirds vote of the governing body enacting such ordinance;
(f) Regulating the anchoring of vessels other than live-aboard vessels outside the marked boundaries of mooring fields permitted as provided in s. 327.40;
(g) Regulating engine or exhaust noise, except as provided in s. 327.65; or
(h) That conflicts with any provisions of this chapter or any amendments thereto or rules adopted thereunder."
This statute, as amended, became effective July 1, 2009.[4]
Further, section 327.22, Florida Statutes, authorizes a county that expends money for the patrol, regulation, and maintenance of any lakes, rivers, or waters and for other boating-related activities in the county to regulate vessels resident in the county.
Section 327.46, Florida Statutes, as amended by section 13, Chapter 2009-86, Laws of Florida, authorizes the creation of boating-restricted areas "for any purpose necessary to protect the safety of the public if such restrictions are necessary based on boating accidents, visibility, hazardous currents or water levels, vessel traffic congestion, or other navigational hazards."[5] Counties are given specific authority to establish certain boating-restricted areas by ordinance including ordinances establishing an idle speed, no wake boating-restricted area;[6] an ordinance establishing a slow speed, minimum wake boating-restricted area;[7] an ordinance establishing a vessel-exclusion zone for such things as public bathing beaches or swim areas and dams, spillways, or flood control structures.[8] Nothing in section 327.46, Florida Statutes, contemplates the creation of boating-restricted areas for purposes other than the protection of the safety of the public.
Chapter 327, Florida Statutes, imposes specific requirements for noise abatement of vessel engines.[9] Counties are authorized to adopt additional noise pollution and exhaust regulations pursuant to section 327.65 (2), Florida Statutes, as amended by section 15, Chapter 2009-86, Laws of Florida.
This office, in Attorney General Opinion 2005-58, advised Citrus County that it was prohibited from adopting an ordinance creating a boating-restricted area near residential properties for the purpose of vessel noise abatement outside of the specific grant of authority provided in Chapter 327, Florida Statutes. In that opinion, the county questioned whether it could create vessel restricted areas, such as idle speed zones, near residential properties as a means of controlling unnecessary vessel noise. The opinion recognizes the statutory and administrative rule prohibiting adoption of any boating-restricted area "for the purpose of noise abatement" and concludes that, while the county could adopt more stringent noise abatement legislation pursuant to the Chapter 327, Florida Statutes, it could not create a boating-restricted area for the purpose of noise abatement.
The ordinance Alachua County proposes is not an ordinance to create a boating-restricted area as defined in section 327.46, Florida Statutes. Section 327.60(2), Florida Statutes, as amended, states that no provision of chapter 327 should be construed to prevent the adoption of any ordinance relating to the operation of vessels with certain specified exceptions. It appears to be the purpose of Alachua County's ordinance to regulate the operation of airboats on county water bodies during particular hours of the day. Pursuant to the statute, a county may not adopt or enforce any ordinance or local regulation "[d]iscriminating against airboats . . . unless adopted by a two-thirds vote of the governing body enacting such ordinance[.]"[10] Alachua County proposes to adopt a curfew restricting the operation of airboats on county waterways and section 327.60(2), Florida Statutes, would appear to authorize the adoption and enforcement of such an ordinance if it is adopted by a two-thirds vote of the governing body of the county. In addition, because a curfew on the operation of airboats would not appear to come within the scope of section 327.46, Florida Statutes, such an ordinance would not require approval by the Fish and Wildlife Conservation Commission pursuant to that statute.[11]
Question Four
You have also asked whether section 327.60(2)(e), Florida Statutes, would allow a local government to adopt an airboat operation curfew by a two-thirds vote of the governing body. You have provided no information on the terms of such an ordinance and this office has no authority to pass on the validity of local legislation.[12] However, any such legislation would be tested against certain constitutional considerations and I outline these below.
Section 327.60(2), Florida Statutes, specifically provides that nothing in Chapter 327, Florida Statutes, prevents the adoption and enforcement of ordinances "discriminating against airboats . . . [if such ordinances are] adopted by a two-thirds vote of the governing body enacting such ordinance[.]"[13] Whether a court would find that a particular ordinance such as a curfew ordinance specifically applying only to airboats falls within the scope of this statute will depend on the particular terms of the ordinance and on its application and enforcement.
I would note that federal courts have recognized that the imposition of a curfew implicates the fundamental right to "move about freely in public."[14] The implication of a fundamental right will subject any such ordinance to a strict scrutiny review by the courts. To survive this strict review, a classification created by an ordinance must promote a compelling governmental interest and must be narrowly tailored to achieve this interest. Any such ordinance must use the least restrictive means to accomplish these goals.[15]
In addition, the Alachua County Commission, in enacting any such ordinance, must balance its concern for the public health, safety, and welfare with a recognition that any such regulation must not be in violation of constitutional protections afforded to the public for the use of, and access to, state sovereignty land. Thus, the commission must recognize and accommodate the constitutionally derived protection known as the public trust doctrine.[16]
In sum, section 327.60(2)(e), Florida Statutes, authorizes counties to adopt ordinances governing the operation of vessels which may discriminate against airboats when such ordinances are adopted by a two-thirds vote of the governing body enacting such an ordinance. In enacting any such ordinance, the county must balance its concern for the public health, safety, and welfare with constitutional considerations and a recognition that any such regulation must not be in violation of constitutional protections afforded to the public for the use of, and access to, state sovereignty lands.[17]
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See generally
56 Fla. Jur. 2d Water s. 152, and see Op. Att'y Gen. Fla. 05-58 (2005).)
[2] See, e.g., s. 861.02, Fla. Stat., "Obstructing watercourse;" s. 861.05, Fla. Stat., "Obstruction to navigation by bridges;" and s. 861.06, Fla. Stat., "Obstructing harbors."
[3] See Board of County Commissioners of Escambia County v.Board of Pilot Commissioners of the Port of Pensacola,42 So. 697 (Fla. 1906) (holding that the depth of the water in a river, harbor, bay, or port in a county is one of the chief elements of its value, and its protection from injury by being filled in is within the purposes for which county governments are established, even though the harbor or bay is also and largely used for passage to and from, and commerce with, points beyond the county); Boardof County Commissioners of Pinellas County v. Ford,419 So. 2d 786 (Fla. 2d DCA 1982) (a county water and navigation control authority could consider navigational factors in regulating the construction of docks under a special act recognizing the right of an upland owner to construct a dock in front of the upland as provided by state law, but permitting the authority to make reasonable rules and regulations for construction thereof; moreover, the authority's decision to deny a private dock permit application on the ground the structure would pose a hindrance to navigation was supported by substantial competent evidence in the form of statements by qualified persons that the waterway was heavily traveled and adversely affected by shoaling, tides, and currents, notwithstanding that the proposed dock complied with deed lot restrictions, the authority's rules, and city zoning ordinances, and was considered reasonable by the United States Army Corps of Engineers).
[4] See s. 64, Ch. 2009-86, Laws of Fla., providing an effective date.
[5] Section 327.46(1), Fla. Stat., as amended by s. 13, Ch. 2009-86, Laws of Fla.
[6] Section 327.46(1)(b)1., Fla. Stat., as amended by s. 13, Ch. 2009-86, Laws of Fla.
[7] Section 327.46(1)(b)2., Fla. Stat., as amended by s. 13, Ch. 2009-86, Laws of Fla.
[8] Section 327.46(1)(b)3., Fla. Stat. Andsee s. 327.46(1)(c), Fla. Stat., authorizing local governments to adopt additional ordinances creating other boating-restricted areas for certain navigability issues.
[9] See s. 327.65(1), Florida Statutes, requiring the exhaust of vessel engines to be muffled by equipment that muffles the noise of the exhaust in a reasonable manner.
[10] Section 327.60(2)(e), Fla. Stat., as amended by s. 14, Ch. 2009-86, Laws of Fla.
[11] See s. 327.46(1), Fla. Stat., as amended by s. 13, Ch. 2009-86, Laws of Fla., which states that no boating restricted ordinance shall take effect until the commission has reviewed the ordinance and determined that the ordinance is necessary to protect public safety pursuant to the statute; andCollier County Board of County Commissioners v. Fish and WildlifeConservation Commission, 993 So. 2d 69 (Fla. 2d DCA 2008).
[12] See s. 16.01(3), Fla. Stat., authorizing the Attorney General to issue opinions on questions of state law.
[13] Section 327.60(2)(e), Fla. Stat.
[14] See, e.g., Schleifer v. City of Charlottesville,992 F.Supp. 823 (W.D. Va., 1997), affirmed,159 F.3d 843 (4th Cir. 1998), petition for cert. denied,526 U.S. 1018, 119 S.Ct. 1252, 143 L.Ed.2d 349 (1999); Qutb v.Strauss, 11 F.3d 488 (5th Cir. Tex., 1993), cert. denied,511 U.S. 1127, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994); Op. Att'y Gen. Fla. 94-02 (1994); U.S.C.A. Const. Amend. 14.
[15] See State v. J.P., 907 So. 2d 1101 (Fla. 2004) and Op. Att'y Gen. Fla. 94-02 (1994) and cases cited therein.
[16] See McDowell v. Trustees of Internal Improvement Fund,90 So. 2d 715 (Fla. 1956); White v. Hughes,190 So. 446 (Fla. 1939); Adams v. Elliott,174 So. 731 (Fla. 1937); and Ops. Att'y Gen. Fla. 85-47 (1985), 79-71 (1979), and 73-430 (1973).
[17] This constitutionally derived protection is known as the public trust doctrine. See McDowell v. Trustees of InternalImprovement Fund, 90 So. 2d 715 (Fla. 1956); White v.Hughes, 190 So. 446 (Fla. 1939); Adams v. Elliott,174 So. 731 (Fla. 1937); and Ops. Att'y Gen. Fla. 94-02 (1994), 85-47 (1985), 79-71 (1979), and 73-430 (1973).